[Civ. No. 69671. Second Dist., Div. Five. Jan. 18, 1984.]

KATHLEEN K., Plaintiff and Appellant, v.
ROBERT B., Defendant and Respondent.

## COUNSEL

Adel & Pollack and Barry A. Pollack for Plaintiff and Appellant.

Stilz, Boyd, Levine & Handzlik and Earl E. Boyd for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—In this action, plaintiff and appellant Kathleen K. seeks damages because she contracted genital herpes, allegedly by way of sexual

intercourse with defendant and respondent Robert B. The trial court granted respondent's motion for judgment on the pleadings based upon failure to state a cause of action. We reverse the judgment.

 Since judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, the standard of appellate review is the same. Like the demurrer, the motion for judgment on the pleadings is confined to the face of the pleading under attack, and the allegations of the pleading must be accepted as true. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 162, pp. 2817-2818; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338].)

The complaint sets forth four causes of action: (1) negligence (alleging that respondent inflicted injury upon appellant by having sexual intercourse with her at a time when he knew, or in the exercise of reasonable care should have known, that he was a carrier of venereal disease); (2) battery; (3) intentional infliction of emotional distress; and (4) fraud (alleging that respondent deliberately misrepresented to appellant that he was free from venereal disease, and that appellant, relying on such representations, had sexual intercourse with respondent, which she would not have done had she known the true state of affairs).

 In granting respondent's motion for judgment on the pleadings, the trial court relied upon the case of *Stephen K.* v. *Roni L.* (1980) 105 Cal.App.3d 640 [164 Cal.Rptr. 618]. In *Stephen K.*, the father of a child filed a cross-complaint against the child's mother who had brought a paternity action, claiming that the mother had falsely represented to him that she was taking birth control pills. The father alleged that in reliance upon that misrepresentation, he engaged in sexual intercourse with the mother, resulting in the birth of a child which he did not want. He further alleged that as a proximate result of the misrepresentation, he had become obligated to support the child financially and had suffered emotional distress.

In affirming dismissal of the cross-complaint, the court held that the misrepresentation was not actionable: "The claim of Stephen is phrased in the language of the tort of misrepresentation. Despite its legalism, it is nothing more than asking the court to supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct. To do so would encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy. . . . [¶] We reject Stephen's contention that tortious liability should be imposed against Roni, and conclude that as a matter of public policy the practice of birth control, if any, engaged in by two partners in a consensual sexual relationship is best left to the

individuals involved, free from any governmental interference." (*Stephen K.* v. *Roni L.*, *supra*, 105 Cal.App.3d 640, 644-645.)[1]

After the trial court entered its judgment, the First District Court of Appeal decided the case of *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422] (hg. den. Sept. 29, 1983). In *Barbara A.*, a woman who suffered an ectopic pregnancy and was forced to undergo surgery to save her life, which rendered her sterile, brought an action against the man who impregnated her (her former attorney), alleging that she consented to sexual intercourse in reliance on the man's knowingly false representation that he was sterile. The court reversed a judgment on the pleadings in favor of the defendant and held that the complaint stated causes of action for battery and for deceit.

The court distinguished *Stephen K.*, noting that: "In essence, Stephen was seeking damages for the 'wrongful birth' of his child resulting in support obligations and alleged damages for mental suffering. Here, no child is involved; appellant is seeking damages for severe injury to her own body." (145 Cal.App.3d at pp. 378-379.) We conclude that these same factors distinguish this case from *Stephen K.*, and accordingly hold that *Barbara A.* is controlling here.

Respondent, urging us to follow *Stephen K.*, criticizes *Barbara A.* in several respects. First, he argues that the viability of appellant's cause of action should not depend upon whether the injury alleged is mental or physical. However, the *Barbara A.* court did not focus solely on the type of injury involved in *Stephen K.*, but upon the fact that Stephen was alleging an injury which had significant public policy overtones: "To assess damages against the mother for false representations about birth control would have the practical effect of reducing or eliminating support from the father by way of offset. Erasing much or all of the father's financial support, to the detriment of the child, is clearly against public policy and the statutory mandate.[2]

"Further, we think it is not sound social policy to allow one parent to sue the other over the wrongful birth of their child. Using the child as the damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to a child." (145 Cal.App.3d at p. 379.)

---

[1]The court also commented: "As to Stephen's claim that he was tricked into fathering a child he did not want, no good reason appears why he himself could not have taken any precautionary measures." (*Id.*, at p. 645.)

[2]The court was referring to Civil Code section 196a, which imposes upon both the natural father and natural mother of a child the obligation to give the child support and education suitable to his or her circumstances.

In the present case, as in *Barbara A.*, there is no child involved, and the public policy considerations with respect to parental obligations are absent.

Respondent also argues that it is not the business of courts to "supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct." (*Stephen K.* v. *Roni L., supra*, 105 Cal.App.3d at pp. 644-645.)

Respondent correctly focuses on the constitutional right of privacy as the crux of this case. Courts have long recognized the right of privacy in matters relating to marriage, family and sex (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct.1029]), and accordingly have frowned upon unwarranted governmental intrusion into matters affecting the individual's right of privacy. (*Stanley* v. *Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243].) The key word here, however, is *unwarranted.* The right of privacy is not absolute, and in some cases is subordinate to the state's fundamental right to enact laws which promote public health, welfare and safety, even though such laws may invade the offender's right of privacy. (*Barbara A.* v. *John G., supra,* 145 Cal.App.3d at p. 380.) Examples cited by the *Barbara A.* court were the penal statutes covering both forcible and consensual sexual acts, registration of convicted sex offenders, the recently enacted criminal statute prohibiting spousal rape (Pen. Code, § 262), and the various laws relating to the paternity of children. In each of these cases, the right of privacy is outweighed by the right of the state to protect the health, welfare and safety of its citizens. The *Barbara A.* court concluded that the right of privacy "does not insulate a person from all judicial inquiry into his or her sexual relations," and expanded the exceptions to the right of privacy to impose liability upon "one sexual partner who by intentionally tortious conduct causes physical injury to the other." (145 Cal.App.3d at p. 381.)

 This is precisely the type of conduct alleged in appellant's complaint. Appellant has alleged that she sustained physical injury due to respondent's tortious conduct in either negligently or deliberately failing to inform her that he was infected with venereal disease. The disease which appellant contracted is serious and (thus far) incurable. The tortious nature of respondent's conduct, coupled with the interest of this state in the prevention and control of contagious and dangerous diseases,[3] brings appel-

---

[3]Respondent's argument that genital herpes is not a venereal disease is unpersuasive. Although herpes is not listed among the "venereal diseases" covered by the Health and Safety Code (specifically § 3001), that section was enacted in 1957, long before herpes achieved its present notoriety. We are not inclined to bar appellant's cause of action on the basis that genital herpes is not a venereal disease. It is a disease that can be propagated by

lant's injury within the type of physical injury contemplated by the court in *Barbara A.* The constitutional right of privacy does not protect respondent here.

It should be noted that several out-of-state cases, cited by the court in *Barbara A.*, have held that a woman's consent to sexual intercourse was vitiated by the man's fraudulent concealment of the risk of infection with venereal disease. (*De Vall* v. *Strunk* (Tex.Civ.App. 1936) 96 S.W.2d 245; *Crowell* v. *Crowell* (1920) 180 N.C. 516 [105 S.E. 206]; *State* v. *Lankford* (1917) 29 Del. 594 [102 A. 63].) Respondent contends that these cases are old and, if decided today, would be dismissed under the public policy considerations outlined in *Stephen K., supra,* 105 Cal.App.3d 640. He distinguishes *Crowell* and *Lankford* (involving suits by a wife against her husband for damages resulting from contraction of venereal disease) on the basis that a husband and wife occupy a confidential relationship of trust and confidence in one another which does not exist between nonmarried persons. However, a certain amount of trust and confidence exists in any intimate relationship, at least to the extent that one sexual partner represents to the other that he or she is free from venereal or other dangerous contagious disease. The basic premise underlying these old cases—consent to sexual intercourse vitiated by one partner's fraudulent concealment of the risk of infection with venereal disease—is equally applicable today, whether or not the partners involved are married to each other.

We are also unpersuaded by respondent's argument that this is really an action for seduction (which he calls "the use of deception to effect intercourse"), and is therefore barred by Civil Code section 43.5.[4] ■ " 'Seduction imports the idea of illicit intercourse accomplished by the use of arts, persuasions, or wiles to overcome the resistance of a female who is not disposed of her own volition to step aside from the paths of virtue.' " (*Barbara A.* v. *John G., supra,* 145 Cal.App.3d at p. 377, citing *Davis* v. *Stroud* (1942) 52 Cal.App.2d 308, 317 [126 P.2d 409].) ■ Appellant is not complaining that respondent induced her to "step aside from the paths of virtue," and in fact she willingly engaged in sexual intercourse with him. This is an action for damages based upon severe injury to appellant's body, which allegedly occurred because of respondent's misrepresentation that he was disease-free. Such an action is not barred by Civil Code section 43.5.

---

sexual contact. Like AIDS it is now known by the public to be a contagious and dreadful disease. At the core of this action is the misrepresentation of defendant that he did not have a contagious disease that could be passed to his partner. If a person knowingly has genital herpes, AIDS or some other contagious and serious disease, a limited representation that he or she does not have a venereal disease is no defense to this type of action.

[4]Civil Code section 43.5, part of the "Anti-Heart Balm" Statute, provides that no cause of action arises for "seduction of a person over the age of legal consent."

In summary, we conclude that *Stephen K.* v. *Roni L.*, on which the trial court relied, is inapplicable here, and that the reasoning of *Barbara A.* v. *John G.*, in which a hearing was denied by our Supreme Court, is controlling.

The judgment is reversed.

Feinerman, P. J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 14, 1984.