428 N.W.2d 103 (1988)
R.A.P., Appellant,
v.
B.J.P., Respondent.
No. C8-88-524.
Court of Appeals of Minnesota.
August 9, 1988.
Review Denied October 19, 1988.
*104 Thomas W. Wexler, Scott A. Higbee, Peterson, Engberg & Peterson, Minneapolis, for appellant.
Stephen C. Davis, Brian Sobol, Katz, Davis, Manka & Haugen, Ltd., Minneapolis, for respondent.
Heard, considered and decided by WOZNIAK, C.J., and SHORT and THOREEN[*], JJ.

OPINION
SHORT, Judge.
Appellant R.A.P. brought an action against his former wife, respondent B.J.P., alleging that she negligently, intentionally, and fraudulently infected him with genital herpes. R.A.P. also asserts that B.J.P. fraudulently induced him to marry her by making false representations about her family background and upbringing.
The trial court granted summary judgment for B.J.P., and R.A.P. appeals. We reverse in part and remand the case because we conclude that R.A.P. has potential causes of action against B.J.P. for negligent and fraudulent transmission of genital herpes.

FACTS
B.J.P. and R.A.P. met in October 1978. They began dating and developed a sexual relationship.
B.J.P. knew at the time she met R.A.P. that she had genital herpes. R.A.P. alleges that he discovered that he had herpes in August 1979. B.J.P. and R.A.P. were married in October 1979.
B.J.P. alleges that she told R.A.P. that she had herpes approximately two weeks after she met him, and that R.A.P. "seemed unconcerned." R.A.P. alleges that B.J.P. did not tell him that she had herpes until after they were married. R.A. P. alleges that he caught herpes from B.J. P. B.J.P. does not dispute this allegation.
The parties remained married for three years, and had a child together in 1982. R.A.P. began marriage dissolution proceedings in January 1983. While the dissolution action was pending, R.A.P. brought this action against B.J.P., alleging that B.J. P. fraudulently and negligently infected him with herpes, that B.J.P. committed battery by having sexual intercourse with him while infected with herpes, and that B.J.P. had "recklessly and intentionally" caused him emotional distress. R.A.P. also alleged that B.J.P. had fraudulently induced him to marry her by making "numerous intentional misrepresentations of material fact about herself, her family, her background, and her upbringing." R.A.P. *105 sought compensatory and punitive damages in excess of $50,000.
The parties' marriage was dissolved in June 1986. In June 1987, B.J.P. moved for summary judgment in R.A.P.'s tort action against her, arguing that R.A.P. had no causes of action for fraudulent or negligent infliction of herpes, or for fraudulent inducement to marry, and that his intentional tort claims were barred by the two-year statute of limitations, Minn.Stat. § 541.07 (1986).
The trial court granted summary judgment for B.J.P., ruling that "the basic gist of many of the issues" was "covered" in the dissolution action, and that R.A.P.'s intentional tort claims were barred by the statute of limitations. The trial court also awarded B.J.P. her costs and attorney fees under Minn.Stat. § 549.21, subd. 2 (1986).

ISSUES
1. Are R.A.P.'s tort claims barred under the doctrine of issue preclusion?
2. Does R.A.P. have a cause of action against B.J.P. for negligent and/or fraudulent transmission of herpes?
3. Are R.A.P.'s intentional tort claims barred by the statute of limitations?
4. Did the trial court properly grant summary judgment for B.J.P. on R.A.P.'s claim for money damages based on B.J.P.'s alleged misrepresentations about her background?
5. Did the trial court err in awarding B.J.P. costs and attorney fees under Minn. Stat. § 549.21, subd. 2 (1986)?

ANALYSIS
Summary judgment is appropriate in cases where there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted. See, e.g., Grondahl v. Bulluck, 318 N.W.2d 240, 242 (Minn.1982). In this case, there are a number of material facts in dispute, and it is not clear that B.J.P. is entitled to judgment as a matter of law. Viewing the evidence in the light most favorable to appellant, he has potential causes of action against B.J.P. for negligent and fraudulent infliction of genital herpes. We therefore reverse in part and remand the case.

I. Issue Preclusion

The trial court found that summary judgment was appropriate because "the basic gist of many of the issues raised" was "covered" in the parties' dissolution action. The trial court apparently reasoned that the doctrine of issue preclusion bars R.A.P. from raising the same issues again.
The doctrine of issue preclusion prevents parties from relitigating issues which are identical to issues already litigated in other actions between the parties. Johnson v. Consolidated Freightways, Inc., 420 N.W. 2d 608, 613 (Minn.1988); Ellis v. Minneapolis Commission on Civil Rights, 319 N.W.2d 702, 704 (Minn.1982). Issue preclusion does not bar this action, because it is clear from the record that none of the issues presented here was litigated in the dissolution action. The dissolution action decided the issues of property division and child custody. The trial court did not determine whether B.J.P. is liable to R.A.P. in tort for damages caused by transmission of genital herpes, or for damages caused by B.J.P.'s alleged fraudulent misrepresentations about her background.[1] R.A.P. is therefore not precluded from raising these issues in this action.

II. Herpes Tort Claims

Since the doctrine of issue preclusion does not prevent R.A.P. from raising his *106 tort claims against B.J.P., we must determine whether R.A.P.'s claims state valid, recognizable causes of action under Minnesota law. Whether Minnesota courts should recognize causes of action for negligent, fraudulent, or intentional transmission of genital herpes, or for intentional infliction of emotional distress in this context is an issue of first impression.[2] We hold that R.A.P. has potential claims against B.J.P. for negligent and fraudulent transmission of genital herpes, but that R.A.P.'s intentional tort claims are barred by the two-year statute of limitations in Minn.Stat. § 541.07 (1986).

A. Negligence

It is undisputed that B.J.P. knew that she had genital herpes when she had sexual contact with R.A.P. The key issue in dispute is whether B.J.P. told R.A.P. about her illness before or after they had sexual contact.
R.A.P. alleges that B.J.P. was negligent because she had sexual contact with him without warning him that she had herpes. He alleges that he contracted herpes as a result of B.J.P.'s negligence, and that he has suffered significant damage. We agree that, on the facts presented here, R.A.P. has stated a prima facie claim of negligence.
The essential elements of negligence are:
1) That the defendant owed the plaintiff a legal duty to avoid injuring the plaintiff;
2) That the defendant breached this duty;
3) That the breach of duty was the proximate cause of injury to the plaintiff; and
4) That the plaintiff suffered damages.
See Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn.1982); see also Restatement (Second) of Torts § 281 (1965); W. Keeton, Prosser and Keeton on the Law of Torts, 164-65 (5th ed. 1984).
B.J.P. contends that R.A.P. has no cause of action against her for negligent transmission of herpes, because she had no legal duty to disclose her illness to R.A.P. before having sexual contact with him. Whether a legal duty existed between B.J.P. and R.A.P. is an issue of law for us to resolve. See Larson v. Larson, 373 N.W.2d 287, 289 (Minn.1985). We hold that B.J.P. had a legal duty to exercise reasonable care to avoid transmitting genital herpes to R.A.P.
Minnesota courts have long recognized that the preservation of public health is a matter of great public importance. Legal duties and rules must therefore be designed, whenever possible, to help prevent the spread of dangerous, communicable diseases. Skillings v. Allen, 143 Minn. 323, 326, 173 N.W. 663, 664 (1919). It is already established under Minnesota law that individuals may be held liable for the negligent transmission of serious infectious diseases. See Kowalske v. Armour & Co., 300 Minn. 301, 305, 220 N.W.2d 268, 271 (1974) (brucellosis); Skillings, 143 Minn. at 327, 173 N.W. at 664 (scarlet fever)[3]. This rule is *107 based on the simple principle that people who have dangerous contagious diseases have a duty to protect others who might be in danger of infection. See Skillings, 143 Minn. at 325-26, 173 N.W. at 664; see also Earle v. Kuklo, 26 N.J.Super. 471, 98 A.2d 107, 109 (1953) (tuberculosis); Hendricks v. Butcher, 144 Mo.App. 671, 129 S.W. 431 (1910) (smallpox); Kliegel v. Aitken, 94 Wis. 432, 69 N.W. 67, 68 (1896) (typhoid fever); Gilbert v. Hoffman, 66 Iowa 205, 23 N.W. 632 (1885) (smallpox).
We see no basis for creating a different rule for genital herpes. Genital herpes is a contagious and debilitating disease.[4] It is extremely painful, and often leads to serious physical[5] and psychological[6] complications. It is presently incurable,[7] and is spreading at an alarming and dangerous rate.[8] Genital herpes thus poses a severe threat to the public health.
Genital herpes is transmitted sexually.[9] There is a significant and obvious risk that people suffering from genital herpes will spread the illness to their sex partners. Therefore, under well-established tort principles, people with herpes have a duty to use reasonable care to avoid infecting others.
The foreseeability of potential injury is a key factor which courts consider in establishing the scope of the legal duty to use reasonable care. See Larson, 373 N.W.2d at 289; Lundgren v. Fultz, 354 N.W.2d 25, 28 (Minn.1984); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). A person has a duty to exercise reasonable care to avoid injury to others whenever he/she is "placed in such a position with regard to another that it is obvious that if he does not use due care in his own conduct he will cause injury to that person." Skillings, 143 Minn. at 325, 173 *108 N.W. at 663-64. People who know that they have genital herpes are in exactly such a position with respect to their potential sex partners. A reasonable person should know that if he/she has a contagious, sexually transmissible disease like genital herpes, the disease is likely to be communicated through sexual contact. Thus, people suffering from genital herpes generally have a duty either to avoid sexual contact with uninfected persons or, at least, to warn potential sex partners that they have herpes before sexual contact occurs. Accord B.N. v. K.K., 312 Md. 135, 538 A.2d 1175, 1179 (1988); Maharam v. Maharam, 123 A.D.2d 165, 510 N.Y.S.2d 104, 107 (1986); S.A.V. v. K.G.V., 708 S.W.2d 651 (Mo.1986); Long v. Adams, 175 Ga.App. 538, 333 S.E.2d 852, 855 (1985), cert. denied (Ga., Sept. 12, 1985); Kathleen K. v. Robert B., 150 Cal.App.3d 992, 198 Cal.Rptr. 273, 276-277 (1984).
B.J.P. argues that the recognition of such a "duty to warn" is an undue invasion of the law into the most private aspects of personal life. We recognize the delicacy of the issues presented here, and we also recognize the difficulties that people with herpes face in their personal lives. However, we cannot ignore the fact that people suffering from herpes are in the best position to control the spread of the disease. On balance, we believe that society's interest in preventing the spread of a dangerous, incurable disease justifies some intrusion into personal privacy.
The scope of the duty of care which we recognize here will necessarily vary depending upon the facts of individual cases. As one commentator has noted, the three words "I have herpes" will be sufficient in most cases to give fair notice of the danger of infection, and to fulfill the duty to use reasonable care to avoid transmitting the disease.[10] Whether the duty to take reasonable precaution to avoid transmission of herpes has been breached is a question of fact for the trial court or jury, as is the question of whether the breach of duty proximately caused injury to the plaintiff. See, e.g., Hafner v. Iverson, 343 N.W.2d 634, 638 (Minn.1984); Illinois Farmers' Insurance Co. v. Tapemark Co., 273 N.W.2d 630, 633-34 (Minn.1978).
In this case, a factual dispute remains over whether B.J.P. breached her duty of care to R.A.P. B.J.P. contends that she told R.A.P. she had herpes two weeks after she met him; R.A.P. contends that she did not disclose her illness until after they were married and after he had contracted herpes from her. The trial court has not yet resolved this dispute, or considered whether B.J.P.'s alleged negligence caused R.A.P. any compensable damage. We therefore remand on these issues.

B. Fraud

R.A.P. also contends that he is entitled to damages because B.J.P. fraudulently failed to disclose that she had genital herpes. B.J.P. argues that R.A.P. has no cause of action against her for fraud, because fraud actions may arise only in contractual or business contexts, and because "it is impossible to make a material misrepresentation by silence." We disagree on both points, and conclude that R.A.P. has a potential cause of action against B.J.P. for fraudulent transmission of herpes.
The elements of fraud include a false representation, made with knowledge of its falsity, or without knowledge whether the representation is true or false, and the intention to induce another to act in reliance on the representation. The other party must actually act in reliance on the false representation, and be damaged as a result. The other party's reliance on the false representation must be reasonable. See, e.g., Burns v. Valene, 298 Minn. 257, 261, 214 N.W.2d 686, 689 (1974).
We find no support for B.J.P.'s assertion that fraud actions may arise only in business or contractual contexts. Although it is true that most fraud claims involve monetary damage resulting from business transactions, it is clear under Minnesota *109 law that fraud claims may also be based on fraudulently-induced personal injuries. "The injury to one's person by the fraud of another is quite as serious as an injury to his pocketbook." Flaherty v. Till, 119 Minn. 191, 192, 137 N.W. 815, 816 (1912); see also Restatement (Second) of Torts, § 557A (establishing liability for physical harm caused by fraudulent misrepresentation or nondisclosure of fact which person had legal duty to disclose).
B.J.P. also argues that R.A.P. cannot state a claim for fraud, because her alleged failure to disclose that she has herpes is not a "misrepresentation." We disagree. The failure to disclose a material fact may amount to a fraudulent representation in cases where a party has a "legal or equitable obligation" to communicate the information to the other party. Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976).
B.J.P. had a legal obligation to tell R.A. P. that she had genital herpes. We have already concluded that people who know that they have genital herpes have a legal duty to take reasonable care to prevent the disease from spreading, and that this duty generally includes, at a minimum, the duty to inform potential sex partners of the possibility of infection. B.J.P.'s knowledge that she had a contagious, incurable, sexually transmissible disease was a material fact that she was obligated to disclose to R.A.P. to protect him from injury. R.A.P. therefore has a potential claim against B.J. P. for her alleged fraudulent failure to disclose her genital herpes before beginning a sexual relationship with R.A.P. Since it remains in dispute whether B.J.P. actually did fail to disclose her illness, summary judgment is improper on R.A.P.'s fraud claim, and we must remand to determine whether R.A.P. can prove the necessary elements of fraud.

C. Intentional Torts

R.A.P. alleges that B.J.P. committed battery by deliberately having sexual contact with him knowing that she had genital herpes, and that B.J.P. "recklessly and intentionally" caused him emotional distress. Both battery and intentional infliction of emotional distress are intentional torts governed by the two-year statute of limitations. See Minn.Stat. § 541.07(1) (1986); Christenson v. Argonaut Insurance Co., 380 N.W.2d 515, 518 (Minn.Ct. App.1986). It is clear from the record that R.A.P. did not assert his intentional tort claims against B.J.P. until nearly 5 years after he discovered that he had genital herpes.
R.A.P. argues that the statute of limitations was "tolled" during the time when he and B.J.P. were married. R.A.P. does not cite any authority for this argument. We see no basis for creating a judicial exception in this case. We therefore hold that R.A.P.'s intentional tort claims are barred under Minn.Stat. § 541.07 (1986).

III. Representations About B.J.P.'s Background

Finally, R.A.P. seeks money damages from B.J.P. because she allegedly misrepresented facts about her "background and upbringing" during the time they were dating. R.A.P. alleges that B.J.P. lied to him about her relationship with her parents, and told him that she had grown up on the East Coast when, in fact, she grew up in Rochester, Minnesota. R.A.P. alleges that these misrepresentations were intended to "induce [his] sympathy, affection and love and to cause him to marry" B.J.P., and that, as a result, R.A.P. has been "damaged in his desire to establish a family and a lasting meaningful relationship, and has been caused to endure great embarrassment, mental anguish, and suffering."
The trial court properly granted summary judgment for B.J.P. on this claim. In order to survive B.J.P.'s motion for summary judgment, R.A.P. had the burden to identify and put into the record specific facts establishing a triable fraud claim. Papenhausen v. Schoen, 268 N.W.2d 565, 571 (Minn.1978); Minn.R.Civ.P. 56.03. The record shows only conclusory allegations. There are no specific facts to show that R.A.P. married B.J.P. in reliance on her alleged misrepresentations, or that her alleged *110 misrepresentations caused him damage. We therefore affirm the summary judgment for B.J.P. on this claim.

IV. Attorney Fees

The trial court awarded B.J.P. costs and attorney fees under Minn.Stat. § 549.21, subd. 2 (1986). An award of costs and fees is appropriate if the party against whom costs and fees are awarded acted in bad faith, asserted a frivolous claim, or asserted an unfounded position solely to delay or harass the other parties. Minn.Stat. § 549.21, subd. 2 (1986). For all of the reasons discussed above, R.A.P.'s claims are not frivolous or asserted on an unfounded position. We therefore reverse the portion of the trial court's order awarding costs and fees to B.J.P.

DECISION
The novelty of a case should not operate to defeat recovery if general tort principles are applicable. Minnesota law has long recognized that an action lies against one who infects another with a contagious disease. The judgment for B.J.P. on R.A.P.'s claims for negligent and fraudulent transmission of genital herpes is reversed, and the claims are remanded. The judgment for B.J.P. on R.A.P.'s claims for battery, intentional infliction of emotional distress, and fraudulent representation of B.J.P.'s background is affirmed. The award of attorney fees to B.J.P. under Minn.Stat. § 549.21, subd. 2 (1986) is reversed.
Affirmed in part, reversed in part, and remanded.
NOTES
[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.
[1] The dissolution decree makes clear that the trial court in the dissolution action was aware of the pending tort action, but did not resolve any of R.A.P.'s tort claims:

Petitioner has commenced a separate civil action against Respondent * * * Because of the peculiar facts alleged therein, it would be inappropriate of the Court to consider it in the Court's apportionment of the parties' property. The Court notes that the acts or omissions complained of took place prior to the parties' marriage.
[2] Several other jurisdictions have already decided to allow tort action for negligent, fraudulent or intentional transmission of genital herpes. See B.N. v. K.K., 312 Md. 135, 538 A.2d 1175 (1988); Maharam v. Maharam, 123 A.D.2d 165, 510 N.Y.S.2d 104 (N.Y.App.Div.1986); S.A.V. v. K.G.V., 708 S.W.2d 651 (Mo.1986); Long v. Adams, 175 Ga.App. 538, 333 S.E.2d 852 (1985), cert. denied (Ga., Sept. 12, 1985); Kathleen K. v. Robert B., 150 Cal.App.3d 992, 198 Cal.Rptr. 273 (1984). The legal and policy issues presented by herpes tort suits have also been discussed in a number of articles and commentaries. See Comment, The Consequences of an Uninformed Menage A Trois Extraordinaire: Liability to Third Parties for the Nondisclosure of Genital Herpes Between Sexual Partners, 29 St. Louis U.L.J. 787 (1985); R. Prentice and P. Murray, Liability for Transmission of Herpes: Using Traditional Tort Principles to Encourage Honesty in Sexual Relationships, 11 J. of Comtemporary Law 67 (1984); Note, Sexual Transmission of Disease: Genital Herpes and the Law, 70 Cornell L.Rev. 101 (1984); Note, Herpes: A Basis for Tort Action in California, 24 Santa Clara L.Rev. 189 (1984); Comment, You Wouldn't Give Me Anything, Would You? Tort Liability for Genital Herpes, 20 Cal.W.L.Rev. 60 (1983).
[3] Other jurisdictions have recognized a similar cause of action with respect to other serious sexually transmitted diseases. See, e.g., Duke v. Housen, 589 P.2d 334, 340 (Wyo.) cert. denied, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979) (gonorrhea); DeVall v. Strunk, 96 S.W.2d 245, 246-47 (Tex.Civ.App.1936) (crabs); Crowell v. Crowell, 180 N.C. 516, 105 S.E. 206, 208 (1920) (venereal disease).
[4] "Genital herpes * * * is an acute inflammatory herpes simplex virus * * * infection of the male or female genital tract." Most patients experience "tenderness, pain, burning, tingling, or itching" caused by open sores in the genital area which appear during herpes attacks. See M. Oxman, "Genital Herpes", Infectious Diseases and Medical Microbiology 1041, 1044 (2d ed. 1986). In addition, patients may experience pain on urination, headaches, swollen lymph nodes, general muscular aches, fever, and overall discomfort. During attacks, herpes is highly contagious. See Note, Kathleen K. v. Robert B.: A Cause of Action for Genital Herpes Transmission, 34 Case W.Res.L.Rev. 498, 501 (1984).
[5] Complications associated with genital herpes include meningitis, cervical cancer, miscarriage, premature delivery, and high mortality rate of babies born to mothers with herpes. B.N. v. K.K., 312 Md. 135, 538 A.2d 1175, 1178 (1988) citing K. Holmes, L. Corey, & P. Pegram, Jr., "Sexually Transmissible Diseases (Venereal Infection)", Clinical Concepts of Infectious Diseases, 232, 245 (3d ed. 1982).
[6] "Anger at falling ill and having pain during outbreaks of acute disease, despair at having an incurable illness, guilt at having acquired a sexually transmitted [disease], and helplessness at preventing recurrences are emotions often expressed during the course of infection * * *." L. Corey & K. Holmes, Genital Herpes Simplex Virus Infections: Current Concepts in Diagnosis, Therapy, and Prevention, 98 Annals of Internal Medicine, 973, 981 (June 1983).

"[O]ne who has genital herpes may be deprived of most normal sexual activity, [and] marriage may be virtually out of the question * * *. * * * It is not surprising that the psychological trauma produced by the disease is often as debilitating as the physical consequences." B.N. v. K.K., 312 Md. 135, 538 A.2d at 1180.
[7] "Genital herpes infection is a viral disease which may be chronic and recurring and for which no known cure exists." Centers for Disease Control, Public Health Service, U.S. Department of Health and Human Services, 1985 STD Treatment Guidelines 14 (September 1985). "There is no really safe and effective systemic approach to cure recurrent herpes simplex infections * * *." S. Schroeder, M. Krupp & L. Tierney, eds., Current Medical Diagnosis & Treatment 1988 at 70-71.
[8] Statistics compiled by the U.S. Department of Health and Human Services indicate that between 67,000 and 76,000 new cases of herpes were reported each year for the period from 1979-1985. Not all cases of genital herpes are reported to public health authorities. See U.S. Department of Health and Human Services, Sexually Transmitted Disease Statistics (1985).
[9] "In some cases [of sexually transmitted diseases], such as gonorrhea and genital herpes simplex virus infection, sexual transmission is the only important mode of transmission, at least between adults." P. Sparling, "Sexually Transmitted Diseases", 2 Cecil Textbook of Medicine 1701 (18th ed. 1988).
[10] Comment, You Wouldn't Give Me Anything, Would You? Tort Liability for Genital Herpes, 20 Cal.W.L.Rev. 60, 68 n. 72 (1983).