Endres v. Endres, No. 1584-03 CnC  (Katz, J., May 27, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                SUPERIOR COURT
Chittenden County, ss.:                      Docket No. 1584-03 CnC


ENDRES

v.

ENDRES


ENTRY


       Plaintiff seeks compensation from her former husband for giving her HPV, a sexually transmitted disease.  Plaintiff alleges that her former husband was unfaithful during the marriage, contracted the disease through

this extramarital relationship, and then gave it to her. She seeks damages for this wrong under the theories of negligence, battery, and intentional infliction of emotional distress. Defendant has made a V.R.C.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. He argues that his lack of actual or constructive knowledge about the disease, or the possibility that he might have had it, is fatal to plaintiff's theory of recovery.

Plaintiff's multiple claims hinge upon a single footing: namely that a spouse has a legal duty to remain sexually faithful to the other during marriage and that the other may recover for harm resulting from a breach of that duty. Plaintiff urges us to accept this duty and its logical implications: 1) that negligence liability automatically attaches to the spouse whose infidelity results in the other contracting a sexual transmitted disease; and 2) that such infidelity vitiates the consent of marriage for the purposes of an intentional tort. While this may be a moral standard to which society aspires, a duty in tort law is premised on more than just moral culpability. Langle v. Kurkul, 146 Vt. 513, 519 (1986); see also Hoover's Dairy, Inc. v. Mid-America Dairymen, 700 S.W.2d 426, 432 (Mo. 1985) (noting that duty arises from a "calculus of factors" including social considerations, moral culpability, economic burdens, foreseeability, and prevention of future harm); 1 D. Dobbs, The Law of Torts § 229, at 582 (2001). Plaintiff cites no case law or support for her proposed marriage-fidelity tort duty but rather extrapolates it from general statements of tort principle concerning dangerous situations. See, e.g., Wright v. Shedd, 122 Vt. 475, 479 (1962) (noting that negligence may lie in the creation of a dangerous situation, such as carelessly confining horses).

But the premise that sexual activity is a dangerous situation akin to improperly boarding a horse does not necessarily follow. Sexual activity

does carry a certain amount of risk in an era where sexual transmitted diseases run in the general population, but it is also the oldest, most private, and most pervasively practiced acts in human society. See Note, <u>Constitutional Barriers to Civil and Criminal Restrictions on Pre- and Extramarital Sex</u>, 104 Harv. L. Rev. 1660 (1991) (noting that sex can be "enormously fun" and the key component of a close relationship as well as a source of shame, ruin, and death); see also Note, <u>Cleansing the System: a Fresh Approach to Liability for the Negligent or Fraudulent Transmission of Sexually Transmitted Diseases</u>, 30 U. Tol. L. Rev. 647 (1999) (citing current statistics on STD infection rates in the United States). We would be highly reluctant to impose such a duty on such a broad portion of the population for such an intimate act based solely on the prevalent moral view of infidelity. We are further dissuaded by the plaintiff's reasoning in light of the extensive body of case law dealing with these exact issues.

A large number of jurisdictions now recognize a cause of action when one partner infects the other with a sexually transmitted disease. See, e.g., <u>Deuschle v. Jobe</u>, 30 S.W.3d 215 (Mo. Ct. App. 2000); <u>McPherson v. McPherson</u>, 712 A.2d 1043 (Me. 1998); <u>Hogan v. Tavzel</u>, 660 So. 2d 350 (Fla. Dist. Ct. App. 5th Dist. 1995); <u>Berner v. Caldwell</u>, 543 So. 2d 686 (Ala. 1989); <u>R.A.P. v. B.J.P.</u>, 428 N.W.2d 103 (Minn. App. 1988); <u>Crowell v. Crowell</u>, 105 S.E. 206 (N.C. 1920). These jurisdictions have supported actions for assault and battery, fraud, negligence, or seduction, where one partner has knowingly infected the other with a sexually transmitted disease. G.Sarno, <u>Tort Liability for Infliction of Venereal Disease</u>, 40 A.L.R.4th 1089, § 2 (1985, Supp. 2004). Jurisdictions that have not recognized such a claim, like Vermont, have either not been faced with the issue or have adhered to older decisions. See <u>Deeds v. Strode</u>, 55 P. 656 (Idaho 1898) (refusing a woman's cause of action against her lover, who gave her a "loathesome disease," because she entered into an illegal

relationship with him). At best, <u>Deeds</u> and its ilk now represent a minority view. At the least, it may be seen as outdated law that apart from Idaho has not been extended to any other jurisdiction in the last 100 years. In fact, cases like <u>Cromwell</u> demonstrate that other courts have long since concluded that a partner owes a certain duty when it comes to infectious diseases. <u>Cromwell</u>, 105 S.E. at 208; see also Comment, <u>When You Should Have Known: Rethinking Constructive Knowledge in Tort Liability for Sexual Transmission of HIV,</u> 52 Me. L. Rev. 261, 264–65 (2000) (tracing the historical liability for spreading diseases, through English and American tort law). Given that Vermont has no such precedent akin to <u>Deeds</u>, we expect that Vermont will follow all recent decisions and recognize such a claim.

The question then becomes how this duty should be formed. Defendant points out that each and every case allowing for tort recovery for the transmission of sexually transmitted diseases has premised recovery on the defendant's actual or constructive knowledge of the disease. See also Note, <u>Kiss and Tell: Making the Case for the Tortious Transmission of Herpes</u> and Human Papilloma Virus, 66 Mo. L. Rev. 929, 940 (2001) ("In both lines of cases, courts have stressed the defendant's actual or imputed knowledge of his or her STD infection."). Even radical commentaries that have suggested a higher duty for disease with delayed or recessive symptoms, such as AIDS, have premised their proposed duties on the ability of the partner, beyond engaging in intercourse, to know that he is or is likely to be carrying the disease. See, e.g., 52 Me. L. Rev. at 293–98 (proposing a constructive knowledge standard for liability in transmitting AIDS based on the partner's engaging in "high risk behavior" as defined by the U.S. Surgeon General).

Thus, the question is not whether the spouse was unfaithful, but

whether he knew or had reason to know that he was bringing a disease into the relationship. The logic behind this is the longstanding tort principle that negligence is premised on the defendant being aware of the conditions that activate his duty. McPherson, 712 A.2d at 1046. Knowledge, whether actual or constructive, is the lens required to make reasonable action clear. Id. Examples of this principle abound through tort. See, e.g., 62 Am. Jur. 2d Premises Liability § 137 (discussing the duty of an owner to invitees for reasonably discoverable conditions). Knowledge as a prerequisite to liability for transmitting an STD to a partner has additional support from its historical antecedents. These come from nineteenth century case law dealing with liability for the wrongful transmission of infectious diseases. 30 U. Tol. L. Rev. at 648–50. Since these diseases were not communicated through sexual conduct, knowledge was a necessary factor to establish that the defendant had been aware of the conditions and, therefore, acted unreasonably. Id.; see Minor v. Sharon, 112 Mass. 477, 489 (1873) (holding a landlord liable for renting out a room he knew to be infected with small pox). When this reasoning was extended to sexually transmitted diseases, it created a broad right of action for sexual partners, regardless of their legal status as partners. 30 U. Tol. L. Rev. at 648–50.

This final point illustrates a major weakness in plaintiff's position. Were we to accept her argument that a duty should extend from the marital relationship, the result would unduly restrict tort liability to the bounds of legal marriage. To illustrate, a boyfriend, who was knowingly infected by his girlfriend as a result of an affair she had outside the relationship, would have no avenue for recovery because the partner did not violate any legal bonds. Cf. Doe v. Roe, 267 Cal. Rptr. 564, 567 (Ct. App. 1990); Meany, 639 So. 2d at 234; R.A.P., 428 N.W.2d at 106 (citing other policy purposes in these situations, such as the preventing the spreading of STDs). In contrast, the spouse's liability would be absolute. Thus, if a husband, in an

open or crumbling marriage, engaged in some extra-marital activity, the other spouse would have an automatic cause of action regardless of either the circumstances or the spouse's awareness, solely because he slept outside the relationship. This is not liability for negligence but strict liability premised on monogamy. No jurisdiction has adopted such a harsh duty of care. Even in jurisdictions which have adopted so-called "monogamy statutes" they have simultaneously have refused to extend them into this area as a form of negligence per sé. Compare 104 Harv. L. Rev. at 1671–78 (discussing the purpose and limits of statutes such as Georgia's, Ga. Code Ann. § 16-6-19 (1988)); with Long v. Adams, 333 S.E.2d 852 (Ga. App. 1985) (holding that violation of the statute does not bar recovery for a partner's knowing transmission of an STD).

Strong as virtues of monogamy are, the real purpose of tort liability in this realm is public health and preventing the spread of such diseases. See generally G.Sarno, 40 A.L.R.4th 1089. This requires people to have some knowledge that they have or may have the disease. Promiscuity or infidelity have never been held to support such an inference of knowledge. McPherson, 712 A.2d at 1045–46. We find the number of jurisdictions adopting this reasoning to be persuasive, in and of itself. But we also find the reasoning behind these decisions to balance correctly the concerns of liability, foreseeability, and privacy. We see no reason to extend tort liability to the broad reaches that plaintiff's theory suggests. Moreover, in this situation plaintiff does not allege that defendant knew or had reason to know that he was infected with HPV when he gave it to her. Therefore, plaintiff's claims are uniformly lacking the necessary knowledge on which liability must hang.

Defendant raised this issue of knowledge explicitly in the multiple briefs supporting his V.R.C.P. 12(b)(6) motion. Having had the need for it

squarely raised, plaintiff could have sought amendment but has not. Without any actual or sufficient constructive knowledge alleged in plaintiff's complaint or filings, this case must be dismissed for failure to state a claim. V.R.C.P. 12(b)(6).

Based on the aforegoing, defendant's motion is granted. Plaintiff's claims are dismissed.

Dated at Burlington, Vermont, _____, 2004.

_____
                                                                  Judge