631 So.2d 14 (1993)
Linda Forte MEANY
v.
Lawrence G. MEANY.
No. 93-CA-0777.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*15 Raymond C. Burkart, Jr., Kendra LaNata Van Dalen, New Orleans, for plaintiff/appellee.
Anthony J. Clesi, Jr., Lynn H. Frank, Ward & Clesi, New Orleans, and John Y. Kennedy, Metairie, for defendant/appellant, Lawrence G. Meany.
Before BYRNES, WARD, and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Larry Meany appeals a trial court judgment awarding his ex-wife, plaintiff Linda Meany, $125,000 in damages based on a jury finding that Mr. Meany negligently transmitted genital herpes to Mrs. Meany. We reverse and render.
Facts:
The parties to this action were married on March 25, 1974. Prior to her marriage, Ms. Meany admits that she had three sexual partners.
Mr. and Mrs. Meany lived together continuously from the date of their marriage until they separated in October 1980; during that period they had two children. The parties were then separated until June 1981, when they reconciled. At the time of their reconciliation, Mr. Meany told Mrs. Meany that he had had sex with at least one other woman during their separation. She claims that he specifically told her he'd only been with one woman; he says he does not remember saying one woman and admits that in fact he had sex with four or five different women during that period.
After the reconciliation, Mr. Meany claims that the parties resumed a sexual relationship, although they did not "act like honeymooners." Mrs. Meany claims that she and her husband had sex only one time after the reconciliation, on March 1, 1985, when their third child was conceived. Both parties agree that they did not engage in sexual activity after that date, although they continued to live together for some unspecified period after that. They eventually divorced in May of 1988.
During the time the parties lived together after the initial separation, they were members of a religious group which believed in faith healing and which therefore discouraged its members from seeking medical attention. For example, Mrs. Meany attempted to have her third child at home without medical assistance, despite the fact that her first two children were born by caesarian section. After three days of labor with her third child, Mrs. Meany was rushed to the hospital for an emergency C-section.
Shortly after the birth of that child, Mrs. Meany claims that she first began to notice an irritation in her genital area. She claims that the irritation was recurring, usually manifesting itself around the time of her *16 monthly cycle. She finally sought medical treatment for this condition in October 1987, when her doctor diagnosed a yeast infection and possible urinary tract infection. She mentioned the problem to the doctor again in May 1988, when she consulted her gynecologist about a tubal ligation to be performed in conjunction with a "tummy tuck." Then, in June of 1988, she had a culture taken, which tested positive for genital herpes. About a year and a half later, in November of 1989, Mrs. Meany consulted a different doctor, who diagnosed venereal warts, a different sexually-transmitted disease. Later that month, Mrs. Meany underwent laser surgery for removal of the warts.
Since the breakup of her marriage, Mrs. Meany has consulted two counselors to help her deal with the problems caused by her divorce and the surrounding circumstances, including the discovery of her contraction of the two sexually-transmitted diseases.
After learning about his ex-wife's conditions, Mr. Meany underwent a blood test which tested positive for genital herpes, although he claims that he has never experienced an outbreak of the disease. Although he underwent a visual exam for venereal warts, he had not undergone an internal inspection. One of Mrs. Meany's other lovers, Donald Heron, testified at trial that he has been completely tested for both genital herpes and venereal warts, and he was negative for both. There is no evidence concerning Mrs. Meany's other two previous lovers.
Mrs. Meany filed suit against her ex-husband, claiming that he negligently infected her with the viruses which cause genital herpes and venereal warts. The jury found in favor of the plaintiff, awarding her a total of $125,000, itemized as follows:

Past and future pain and suffering $ 7,500
Past and future mental anguish 50,000
Permanent disability 10,000
Past and future medical expenses 50,000
Loss of society and enjoyment of
life 7,500
 ________
TOTAL $125,000

Mr. Meany appeals, making the following assignments of error:
1. Mrs. Meany failed to carry her burden of proving that he infected her with the sexually-transmitted diseases.
2. He had no duty to avoid transmitting a sexually-transmitted disease which he did not know he had.
3. The damages were excessive.
4. The judgment should be reduced by the limits of his homeowner's insurance policy.
5. Any recovery by Mrs. Meany should be prohibited by public policy.
Because we find error which requires reversal based on Mr. Meany's second assignment of error, we pretermit discussion of the other issues raised by the appellant.

Lack of duty
By his second assignment of error, Mr. Meany claims that the trial court erred in finding that he had a duty to either warn Mrs. Meany of the possibility of contacting venereal diseases from him or protect her from contraction of the diseases, because he was unaware of the fact that he had the diseases at the time of his last sexual encounter with his ex-wife in March of 1985. He cites jurisprudence from other states holding that a person cannot be held liable for spreading a contagious disease which he did not know that he had. He claims that holding him liable under the circumstances would make him strictly liable for transmitting a disease of which he was unaware. By his reply brief, Mr. Meany claims that the general contagious disease law developed in the cases from other states is supported by Louisiana's duty/risk analysis. He also alleges that lack of knowledge of a risk on the part of an alleged tortfeasor precludes a finding of negligence because a person has no duty to prevent a risk that he does not recognize.
Mrs. Meany counters by saying that Louisiana law imposes a duty on Mr. Meany to warn and protect her from transmission of the diseases, if he knew or should have known that he had the diseases. She cites LSA-R.S. 40:1062, which makes it unlawful to infect another person with a venereal disease, which she says signifies the state's intention to impose a duty on people not to infect others with venereal diseases. Given *17 the "nature of his extramarital affairs, and the symptoms he exhibited,"[1] Mrs. Meany claims that Mr. Meany should have known that he might have genital herpes and venereal warts.
Generally, in order to be entitled to recover damages based on a negligence cause of action, a plaintiff has the burden of presenting the following:
(1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
Wilson v. Department of Public Safety & Corrections, 576 So.2d 490, 493 (La.1991), citing Fowler v. Roberts, 556 So.2d 1, 4-5 (La.1989) (citations omitted). In the absence of proof of any of the above elements of a negligence cause of action, the plaintiff is not entitled to recovery.
In the instant case, Mr. Meany claims that the trial court erred in finding that he owed a duty either to warn Mrs. Meany that he had venereal diseases or to protect her from contacting the diseases. Generally, determination of whether a particular defendant owes a duty to the plaintiff under the circumstances of a case is a question of law. Roberts v. Benoit, 605 So.2d 1032, 1043 (La.1991). Therefore, the duty element should be decided by the trial judge, although the other four questions are usually left to a jury "unless reasonable minds could not differ." Wilson, 576 So.2d at 493.
No Louisiana court has previously decided the duty owed by one sexually-active adult to another. However, courts in several other states have addressed this question. For example, the Georgia Court of Appeals stated, in Long v. Adams, 175 Ga.App. 538, 333 S.E.2d 852 (1985), that the duty owed to sexual partners is "the same one that every individual in this state owes another: the duty to exercise ordinary care not to injure others." Id. 333 S.E.2d at 854. This statement is certainly consistent with Louisiana law, as revealed by La.C.C. art. 2315.
Many of the out-of-state cases which have addressed the duty to warn about or protect from the possible transmission of sexuallytransmitted diseases were concerned with a different problem than the one we face in the instant case. Mrs. Meany correctly cites many of those cases for the proposition that a sexually-active adult does have a duty to warn his sexual partners about the fact that he has venereal diseases and even to protect his sexual partners for contracting those diseases, under some circumstances.[2] However, in all of those cases, the court was concerned with the imposition of a duty under circumstances indicating that the defendant knew or should have known that he or she had contracted genital herpes. In fact, the requirement that the plaintiff prove that the defendant either knew or should have known that he or she had genital herpes before liability will attack appears to be universal, under "all theories of liability." Karp & Karp, Domestic Torts: Family Violence, Conflict and Sexual Abuse 94 (1989).
The requirement that the plaintiff in cases based on negligent transmission of venereal diseases prove that the defendant had knowledge of his condition in order to be placed under a duty to warn or protect has been explained as follows:
*18 While courts have generally required that defendant have had actual or imputed knowledge of his disease before liability can attach, awareness of the specific nature of the disease is not required. Defendant need only realize that he is diseased. Since the presence of open, oozing genital sores manifests a serious problem regardless of whether or not the sufferer has identified it as genital herpes, any defendant who has experienced an attack should be deemed to possess the requisite knowledge. Proof that defendant had visited a doctor concerning the herpes symptoms would increase the courts' willingness to impute knowledge.
It may be argued that the real basis of negligence lies in defendant's failure to recognize his ability to transmit disease, and that the presence of obvious physical symptoms should not be relied on to impute knowledge of contagion. However, courts have inferred knowledge of the causal connection between circumstances and results in contexts less clear cut than genital herpes. For instance, one court has imputed the knowledge that eating moldy food causes serious injury. There is nothing inherent in mold to suggest it is dangerous, but, as the court said, the individual simply must realize this fact. No more of a leap in logic is required to impute the knowledge that engaging in sexual relations while afflicted with overt herpes symptoms will injure the other party.
Kimm Alayne Walton, Note, Kathleen K. v. Robert B.: A Cause of Action for Genital Herpes Transmission, 34 Case W.Res.L.Rev. 498, 514-515 (1984). (Footnotes omitted.)
We believe that this is the correct standard. A defendant who is completely unaware of his own infection with sexuallytransmitted diseases cannot reasonably be held to a duty to either warn his partners about or protect his partners from transmission of those diseases. That duty can attach only when the defendant had actual or constructive knowledge, as discussed above.
Thus, the question in this case is whether Mrs. Meany carried her burden of proving that Mr. Meany in fact had actual or constructive knowledge that he was infected with venereal diseases at the time of his last sexual contact with his ex-wife in March of 1985. A close review of the record reveals that Mrs. Meany failed in this burden of proof. In fact, the record is completely devoid of such evidence.
Mrs. Meany does not claim that she presented any evidence that Mr. Meany had actual knowledge of his infection with genital herpes. Instead, she relies on her contention that Mr. Meany told her that he had had a "drippage" at one time, which was treated by a doctor in LaPlace. However, nowhere in the record is there any evidence that a "drippage" is a symptom of genital herpes, or of venereal warts. Mrs. Meany also would have us impose liability on Mr. Meany on the basis of the "nature of his extramarital affairs," apparently referring to his admission that he had sex with four or five women whose names he does not remember during the time the couple was separated in 1980-81. However, Mrs. Meany admits that Mr. Meany informed her that he had had one sexual partner during that time; therefore, she was warned that her husband had not been completely faithful to her during their separation. In the absence of evidence that Mr. Meany had some objective symptoms of the disease prior to their sexual contact, Mrs. Meany had as much knowledge as Mr. Meany that he had engaged in conduct from which he could have contracted a sexuallytransmitted disease. Under the circumstances, Mrs. Meany failed to carry her burden of proving that Mr. Meany had a duty to warn her about the disease or protect her from contracting the disease.

Conclusion
Since Mrs. Meany failed to prove that Mr. Meany had a duty to warn her of or protect her from the disease, she is not entitled to recovery of damages under a negligence theory. Accordingly, the trial court judgment awarding Mrs. Meany damages is reversed.
REVERSED.
NOTES
[1] Mrs. Meany claims that when she first confronted her ex-husband with the fact that she had tested positive for herpes, he told her that he had previously consulted a doctor in LaPlace because of a "drippage."
[2] See M.M.D. v. B.L.G., 467 N.W.2d 645, 647 (Minn.App.1991); Doe v. Roe, 218 Cal.App.3d 1538, 267 Cal.Rptr. 564, 566 (1st Dist.1990); Berner v. Caldwell, 543 So.2d 686 (Ala. 1989); Mussivand v. David, 45 Ohio St.3d 314, 544 N.E.2d 265, 269 (Ohio 1989); B.B. v. K.K., 312 Md. 135, 538 A.2d 1175, 1179 (1988); R.A.P. v. B.J.P., 428 N.W.2d 103 (Minn.App.1988); Maharam v. Maharam, 123 A.D.2d 165, 510 N.Y.S.2d 104, 107 (A.D. 1st Dept.1986); Long, 333 S.E.2d at 854.