**J.B., Plaintiff,**

v.

**Antoinette BOHONOVSKY, as Executrix
of the Estate of J.K., Defendant.**

Civ. No. 92–77 (HLS).

United States District Court,
D. New Jersey.

Nov. 3, 1993.

Steven J. Polansky, Spector Gadon & Rosen, Moorestown, NJ, for plaintiff.

John E. Slavitt, Slavitt, Fish & Cowen, P.A., Newark, NJ, for defendant.

## OPINION

SAROKIN, District Judge.

Before the court is defendant's motion for summary judgment, for an order compelling certain discovery responses, and for sanctions pursuant to Rule 11.[1]

*Introduction* [2]

 There can be little doubt that a person who knows that he or she has AIDS and misrepresents or conceals that knowledge from a sexual partner who then contracts AIDS as the result of unprotected sex, should be liable for the injuries sustained by that partner. A person who knowingly has AIDS, has a duty to disclose it and take the steps necessary to protect against its transmission to others. In this matter, the evidence presented indicates that although plaintiff was exposed to AIDS, he has not contracted it; and that because of the lapse of time, it is probable that he will not do so as the result of his relations with the decedent. Plaintiff, nonetheless, claims that the emotional distress caused by the fear of contracting AIDS and knowledge of the duplicity of his longtime lover is sufficient to warrant recovery, even if the illness never occurs and is not likely to occur. The evidence submitted suggests that the decedent specifically denied having the disease, explained away his symptoms, and intentionally misled the plaintiff while continuing their relationship over many years.

---

1. Defendant originally brought her motion for summary judgment as a motion to dismiss. However, both parties submitted matters outside of the pleadings for the court's consideration and counsel for both parties agreed at oral argument that defendant's motion should be converted under Rule 12(b) into one for summary judgment.

2. Although the parties have taken no steps to assure anonymity or privacy in this action, the court has determined not to refer to them by name either in the caption or content of this opinion, because of the very personal nature of the matters discussed.

The subsequent assurances received by plaintiff that his risk diminished with the lapse of time and the receipt of comforting test results do not eradicate his original and understandable fear and anguish. However there appears to be no physical injury to support a claim for intentional tort, and plaintiff has presented no competent evidence of severe emotional distress to permit that claim to go forward.

It is not unreasonable to infer that upon learning that one's lover has AIDS, there is a period of intense anxiety awaiting the result of one's own tests over an extended period of time. But that inference alone is not sufficient to support a claim for emotional distress. What makes that claim viable is the intensity of the distress, not its mere existence. Thus in order to withstand defendant's motion for judgment, plaintiff must come forward with competent evidence regarding the severity of his emotional distress, and he has failed to do so.

Those who knowingly put others at such grave risk should not escape liability merely by the fortuitous circumstances that their conduct did not result in the actual transmittal of the disease. If nothing else, fear of liability may serve as a deterrent to such hateful conduct in the guise of love. Properly supported by competent evidence and medical opinion, claims for emotional distress are and should be cognizable. In this matter, however, plaintiff has failed to meet the threshold necessary to permit this matter to go forward.

Thus, although the court has great sympathy for the anguish plaintiff undoubtedly suffered as a result of this betrayal, his claim must be dismissed because of his failure to document his claim either through his own sworn statement or that of a medical expert.

*Background*

Plaintiff J.B. commenced this action in January of 1992 alleging various causes of action against the Estate of J.K. ["decedent"]. For the purposes of this motion, the following facts are undisputed unless otherwise noted.

In January of 1986, decedent began having sexual relations with plaintiff. In the summer of 1986, decedent tested positive for the Human Immunodeficiency Virus ("HIV"). In or about late 1987 or early 1988, decedent was diagnosed as having Acquired Immune Deficiency Syndrome ("AIDS"). Decedent continued to have sexual relations with plaintiff until July of 1990. He did not disclose his medical status to plaintiff during the four year period in which they were intimate. Both decedent and plaintiff had other sexual partners during this four-year period. Plaintiff did not learn that decedent had contracted AIDS until September 4, 1990. He died from his condition on October 16, 1990.

Plaintiff has been tested for the presence of HIV on various dates over the last five years: June 7, 1988, June 5, 1989, June 5, 1990, September 14, 1990, July 2, 1991, and February 11, 1992. On each occasion, plaintiff has tested negatively. Defendant alleges that plaintiff has continued to engage in homosexual relations with new partners.

Plaintiff's complaint states four causes of action. Count one alleges that decedent "negligently" engaged in consensual sexual relations with plaintiff without proper precautions and without disclosing his condition. Complt. at 2. Count two alleges that decedent "intentionally" engaged in consensual sexual relations with plaintiff which defendant knew or should have known created a risk that plaintiff would become HIV-infected. Complt. at 3. Count three states that decedent "intentionally" or "negligently" made representations to plaintiff which prevented plaintiff from learning of the defendant's condition and which induced plaintiff to engage in activity which exposed him to HIV-infection. Complt. at 4. Count four alleges that decedent breached his fiduciary duty to plaintiff by not disclosing the fact that he had tested positively for HIV and that he was subsequently diagnosed with AIDS. Complt. at 5.

In his prayer for relief, plaintiff seeks to recover compensatory and punitive damages for his medical testing expenses, for the intentional tort of exposing him to HIV infection, for the enhanced risk that he will contract AIDS, and for the intentional infliction

of emotional distress.[3] Defendant has now moved for summary judgment on all counts of the complaint. Defendant has also moved for an order compelling plaintiff to produce certain discovery responses and for sanctions.

*Discussion*

### I. Defendant's Motion for Summary Judgment

■ In order to prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that, viewing the facts in the light most favorable to the non-movant, the movant will prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 84 (3d Cir.1987).

In his opposition to defendant's motion, plaintiff clarifies that he is only pursuing claims for the intentional tort of exposing him to HIV infection and for the intentional infliction of emotional distress. Pl.Supp. Mem. at 1. Plaintiff asserts that he will not pursue his claims for misrepresentation, for breach of a fiduciary duty, for enhanced risk, or for medical surveillance costs. Accordingly, these claims are dismissed.[4]

### A. Intentional Exposure to HIV Infection

■ Plaintiff alleges that the decedent committed the intentional tort of knowingly and recklessly exposing him to HIV infection by engaging in consensual sexual relations with him. Defendant counters that this cause of action is fatally flawed because plaintiff has no injury. The court agrees.

Defendant has submitted a medical report from William E. Farrer, M.D., F.A.C.P., Chief of the Division of Infectious Diseases at St. Elizabeth Hospital in Elizabeth, New Jersey, indicating that HIV infection "can be transmitted through sexual contact or through exposure to infected blood or body fluids." Def.Mem.Exh. A. Plaintiff's last sexual contact with the decedent was in July of 1990, over three years ago. Dr. Farrer states that a person who has contracted HIV infection will normally test positively for the presence of HIV within four to twelve weeks after being exposed. Def.Mem.Exh. A. However, Dr. Farrer recommends that "[f]or a person of high-risk exposure, follow-up testing at six months, twelve months, and possibly even two years may be performed." *Id.* Plaintiff has tested negatively for the presence of HIV in at least six tests conducted over the last three years, the most recent having been performed on February 11, 1992. Plaintiff's papers indicate that he believes that he is currently not HIV positive.

Defendant argues that if plaintiff has not yet tested positively for the presence of HIV, he did not contract HIV infection from his relations with decedent. Defendant further argues that plaintiff's behavior of continuing to engage in homosexual relations with new partners has severed the causal connection between plaintiff's contact with decedent and any future test which indicates that plaintiff has become HIV positive. Defendant has submitted the report of Dr. Farrer in support of this argument. The report states in relevant part that:

> If a person possibly exposed to HIV infection were to have a negative ELISA test [the enzyme-linked immunoabsorbant assay test used to detect HIV infection] at two or more years after exposure, their chance of being truly infected but seronegative is extremely small. If such a person had continued high-risk contacts with potentially HIV-infected individuals and subsequently then became HIV positive, it would be more likely that they were infected by the subsequent contacts.

Def.Mem.Exh. A.

Plaintiff does not dispute that he has continued to engage in homosexual relations

---

**3.** The court notes from the outset that plaintiff's prayer for relief seeks compensation for claims that are not articulated in the body of the complaint, *e.g.*, for intentional infliction of emotional distress.

**4.** As an initial matter, the court notes that defendant has also raised the issue that plaintiff cannot meet the jurisdictional requirement of dem-

onstrating that at least $50,000.00 is in controversy. Because plaintiff has alleged a cause of action for intentional infliction of emotional distress, for which punitive damages are available, the court concludes that plaintiff's complaint satisfies the minimum amount in controversy requirement.

with new partners (although he has refused to answer interrogatory questions regarding the identity of his partners until defense counsel agrees to sign a confidentiality provision), and he has not offered any contrary evidence regarding the latency period of HIV infection.

Based on the information submitted, the court concludes that although the decedent's sexual contact with plaintiff exposed plaintiff to HIV infection, plaintiff has offered no facts to demonstrate that he actually contracted HIV infection as a result of the decedent's actions. The parties agree that plaintiff is currently testing to be HIV negative, and defendant has submitted unrebutted evidence that the possibility that plaintiff is truly infected but continuing to test negatively more than two years after his last exposure is "extremely small."[5] In the absence of any indicia that plaintiff is actually infected, the court concludes that plaintiff has failed to demonstrate that the decedent's conduct caused him any physical injury. The fear of contracting AIDS is cognizable, if at all, under plaintiff's separate claim for intentional infliction of emotional distress.

Absent physical injury, plaintiff's claim for intentional exposure must be dismissed.

### B. Intentional Infliction of Emotional Distress

■ Both parties agree that New Jersey recognizes a cause of action for intentional infliction of emotional distress. The New Jersey Supreme Court laid out the necessary elements of this claim in *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 544 A.2d 857 (1988), stating that "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Id.* at 366, 544 A.2d 857.

"Many jurisdictions have allowed recovery based on a fear of contracting a disease when the disease is one that involves a latency or incubation period." *Burk v. Sage Products,*

*Inc.,* 747 F.Supp. 285, 287 (E.D.Pa.1990). In such cases, a plaintiff has an additional hurdle to satisfy—"Each of these cases, however, involves circumstances where the plaintiff's initial exposure to the agent which caused the potential for disease was not at issue." *Id.* (plaintiff was "unable to demonstrate that the needle that pricked him was used on an AIDS patient."). Here, plaintiff and decedent had unprotected sexual relations on occasion, which demonstrates that plaintiff was clearly exposed to the AIDS virus. *See* Def.Mem.Exh. C (Pl.Response to Interrogatory # 14).

Defendant argues that she is entitled to summary judgment on this claim because plaintiff has not suffered severe emotional damage. Defendant claims that a letter authored by plaintiff's treating psychiatrist which plaintiff produced during discovery does not support plaintiff's claim of substantial distress. The letter, dated September 9, 1992, was sent to plaintiff's attorney and states as follows:

I have been seeing [plaintiff] in psychotherapy since April 1989. Initially he sought help because of his long-standing chronic depression that was interfering with his capacity to enjoy his work and his relationships. He felt lonely and disconnected from his feelings and his relationships.

His relationship with [decedent] was important to [plaintiff]. It had been his most intimate relationship up to that time. When [plaintiff] discovered that [decedent] was very sick with AIDS and had never informed him that he was infected, [plaintiff] was extremely upset. He felt betrayed. [Decedent's] dishonesty contributed to increasing [plaintiff's] depression, as he had difficulty dealing with the combination of grief over his loss, frustration at having not been allowed to be of help to someone he cared about so much, and anger at being deceived. While [plaintiff] has made progress in understanding these

---

5. The court acknowledges that defendant has not submitted evidence proving that there is a fixed time period after an exposure beyond which a person who tests negatively for HIV can definitively be said not to have contracted the infec-

tion. However, plaintiff may not sustain his cause of action based on the hypothetical possibility that he will someday show signs of being infected and that he will be able to attribute this negative test to his contact with decedent.

feelings in his therapy, they have continued to come up in our work together. Def.Mem.Exh. B. According to defendant, this letter reveals that plaintiff experienced normal emotional difficulty in reaction to decedent's alleged wrongdoing, not debilitating mental distress. Moreover, defendant argues that it indicates that plaintiff's feelings of anguish may be attributable to a pre-existing medical condition, not decedent's actions.

Plaintiff has not submitted any evidence directly rebutting defendant's argument. He has not provided a personal affidavit describing how decedent's actions affected him, nor has he produced any affidavits from his treating psychiatrist.[6] Plaintiff relies solely upon the unsworn allegations in his complaint and his legal memoranda. These allegations are not competent nor admissible evidence and are conclusory at best. Plaintiff's complaint repeatedly states that as a result of decedent's conduct, plaintiff "has suffered severe emotion distress," but includes no facts detailing the nature of the distress. *See* Complt. at 2–5. Plaintiff's memorandum in opposition to this motion states that "[l]iving with the fear of death, especially one which is so painful, long and drawn out, is, without a doubt, so severe that no person could be expected to endure without great emotional distress." Pl.Mem. at 10. This statement is a generalized proposition about how fear may affect a person; it is not a particularized description of plaintiff's emotional injuries.[7]

■ In opposing a motion for summary judgment, a party must do more than simply show that there is some metaphysical doubt as to the material matters; he must come forward with specific facts indicating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Here, plaintiff has failed to submit any additional facts regarding his psychological injuries. This is so despite the fact that, after the parties agreed at oral argument to convert defendant's motion into one for summary judgment, the court provided both parties with additional time to submit any further papers they deemed necessary for the court's decision.[8]

The *Buckley* court recognized that a dispute about the severity of a plaintiff's emotional distress raises questions of both law and fact. *Buckley*, 111 N.J. at 367, 544 A.2d

---

6. For example, in a state court case with facts similar to the instant matter, the plaintiff alleged specific details of the impact of learning that he had unknowingly been exposed to the AIDS virus. *Christian v. Sheft*, No. C 574153 (Cal.Super.Ct. Feb. 17, 1989). The plaintiff and Roy Fitzgerald, a/k/a Rock Hudson, had a sexual relationship from April 1983 to February 1985. As the court in a later proceeding described:

On June 8, 1984, Hudson was conclusively diagnosed as having AIDS. In July 1985, while Hudson was in Europe, it was publicly announced that he had AIDS. Several seconds after learning of the public announcement, Christian blacked out from fear. He also lost sleep, had nightmares, sweated excessively, lost weight, became anxious and short tempered, and occasionally vomited as a result of learning that Hudson had AIDS.

*Aetna Casualty & Surety Co. v. Sheft*, 989 F.2d 1105, 1106 (9th Cir.1993). The jury found that Hudson knew he had AIDS but concealed this information from Christian; he misrepresented his condition to Christian; Hudson's actions were done with the "intent to induce Christian to continue engaging in 'high risk sex' "; Christian reasonably relied upon Hudson's false assurances and thus "suffered increased emotional distress"; Hudson acted outrageously; and his outrageous conduct was done with "either intent to cause Christian emotional distress, or with reckless disregard of the probability of causing emotional distress to Christian." *Id.* The jury awarded the plaintiff over 14 million dollars in compensatory damages.

7. Plaintiff's discovery responses are similarly insubstantial. His answers to interrogatories state that "psychological trauma was induced by [decedent's] outrageous behavior, and as a result, plaintiff is still in psychotherapy." Def.Mem. Exh. C (Pl.Response to Interrogatory # 39). Another answer states that "[p]laintiff has sustained deep and prolonged emotional trauma." *Id.* (Pl.Response to Interrogatory # 50).

8. Plaintiff submitted a supplemental memorandum stating that his emotional distress claim should not be dismissed because his deposition has not yet been taken. Pl.Supp.Mem. at 4. Plaintiff appears to misunderstand that in order to withstand a summary judgment motion, he must submit affidavits or other evidence to demonstrate that there is a disputed issue of fact creating a genuine issue for trial. *See* Fed. R.Civ.P. 56(e). Plaintiff cannot resist the motion simply by stating that he will supply material facts at some point in the future.

857. As a matter of law, the court must determine whether the requisite level of emotional distress can reasonably be found. *Id.; Fleming v. United Parcel Serv., Inc.,* 255 N.J.Super. 108, 167, 604 A.2d 657 (Law Div. 1992). It is only after an affirmative finding by the court on this issue that the matter may proceed to trial. *Fleming,* 255 N.J.Super. at 167, 604 A.2d 657. In assessing plaintiff's proof, the court must keep in mind that in order to succeed on an intentional infliction of emotional distress claim, a plaintiff must prove that his emotional distress is "so severe that no reasonable man could be expected to endure it." *Id.* 111 N.J. at 366–67, 544 A.2d 857.

In this case, plaintiff professes to have debilitating injuries, but the scanty proof contained in the record on this claim, which was submitted by defendant and not plaintiff, indicates only that plaintiff has continued to meet with his treating psychiatrist in order to discuss his reactions to decedent's conduct. At most, the unsworn letter authored by plaintiff's doctor indicates that decedent's actions contributed to plaintiff's ongoing feelings of depression and caused him to feel betrayed and angry.

The court finds that this letter is insufficient as a matter of law to support a finding that plaintiff's emotional distress was so severe that no reasonable man could be expected to endure it. The court looks to other New Jersey cases which have held that general feelings of despondency or anguish are not sufficient to support a claim for emotional distress. *See, e.g., Buckley,* 111 N.J. at 368–69, 544 A.2d 857 (plaintiff complained of aggravation, embarrassment, an unspecified number of headaches, and loss of sleep); *compare Portee v. Jaffee,* 84 N.J. 88, 91–91, 101, 417 A.2d 521 (1980) (finding sufficient degree of severity where mother grew so despondent after seeing her son die while trapped in an elevator that she became severely depressed and attempted suicide).

## II. Defendants' Remaining Motions

Defendant's motion to compel certain discovery responses is rendered moot given the court's dismissal of both of plaintiff's remaining causes of action. The court thus turns to defendant's argument that the court should impose sanctions upon plaintiff under Rule 11 of the Federal Rules of Civil Procedure for filing a pleading alleging claims which are not grounded in existing law and not asserted in good faith. Defendant's motion is directed specifically at plaintiff's attempt to state a "novel" claim for intentional exposure to HIV infection.

Rule 11 provides for sanctions in the event of a violation of the requirement that a motion be "well grounded in fact and ... warranted by existing law" and "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ. P.Rule 11. The Third Circuit has held that Rule 11 is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.... Rather, '[t]he test now is an objective one of reasonableness.'" *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986) (citations omitted).

The court finds that plaintiff's assertion of an intentional exposure claim does not warrant sanctions. While plaintiff acknowledges that this claim was not heretofore recognized in New Jersey, the court will not punish him for testing a novel legal theory. Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R.Civ.P. 11, Notes of the Advisory Committee on the 1983 Amendment. Furthermore, the court notes that the body of law involving AIDS and its transmission is newly emerging and that plaintiff appears to have based his claim on reports that similar claims have been accepted in other jurisdictions.

Indeed, as the court noted above, such contemptuous conduct should be subject to liability, not only to compensate the victim, but also serve to deter those who would engage in such acts of betrayal. Accordingly, sanctions will not be imposed.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted; defendant's motion for an order compelling cer-

tain discovery responses is dismissed as moot; and defendant's motion for sanctions pursuant to Rule 11 is denied.