**In re Alan LOUIE, Debtor.**

**Mychael ROBINSON, Plaintiff,**

v.

**Alan LOUIE, Defendant.**

**Bankruptcy No. 97–30448DDM. Adversary No. 97–3335DM.**

United States Bankruptcy Court, N.D. California.

Sept. 2, 1997.

Marty K. Courson, Welch, Olrich & Mori, San Francisco, CA, for Plaintiff.

Waukeen Q. McCoy, San Francisco, CA, Michael Fluetsch, San Rafael, CA, for Debtor/Defendant.

MEMORANDUM DECISION REGARDING CLAIMS BASED ON FEAR OF HIV/AIDS AND FOR SEXUAL BATTERY

DENNIS MONTALI, Bankruptcy Judge.

## I. INTRODUCTION

In this nondischargeability adversary proceeding, plaintiff Mychael Robinson ("Robin-

son") seeks a determination of nondischarge-ability of debt against debtor and defendant Alan Louie ("Louie") on a variety of theories.

For the reasons discussed below, the court will dismiss Robinson's causes of action for fraud and deceit regarding HIV/AIDS, sexual assault, and intentional infliction of emotional distress for failure to state claims upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6), made applicable by Fed. R. Bankr.Proc. 7012(b) ("Rule 12(b)(6)"). The court will deny Louie's motion to dismiss Robinson's cause of action for sexual battery, concluding that Robinson has made a sufficient showing to sustain this cause of action as a matter of law.[1]

## II. BACKGROUND[2]

In 1991, Robinson and Louie met and began dating. They continued their relationship until November of 1995 when they exchanged commitment vows and moved in together. Robinson and Louie agreed to pool and share equally all of their assets. Further, they agreed that Louie would be the primary source of income and Robinson would be responsible for maintaining the household. Based on this allocation of responsibilities, Robinson closed his two businesses and Louie agreed to support him.

Robinson and Louie, who had previously engaged in protected sexual intercourse, began having frequent, high-risk, unprotected sex after Louie stated to Robinson that Robinson did not need a condom and Louie removed a condom from Robinson.

In December of 1995, Robinson discovered several bottles of Azidothymidine[3] hidden in Louie's house. Robinson confronted Louie, who then admitted that he had been HIV-positive since roughly 1984. The parties then terminated their relationship. Robinson has not become HIV-positive, having subsequently tested negative for the virus.

On October 4, 1996, Robinson filed a state court complaint (the "State Court Complaint") for fraud, intentional infliction of emotional distress, breach of partnership and breach of fiduciary duty, among other things. Thereafter, Louie filed a voluntary Chapter 7 petition and Robinson filed this adversary proceeding seeking, *inter alia*, that any mon-

---

1. Robinson's claims for declaratory relief regarding existence of a putative marriage, dissolution of a putative marriage and division of quasi-marital property, breach of domestic partnership agreement, fraud and deceit related to that agreement and the parties' relationship, conversion, breach of fiduciary duty and constructive trust are the subject of a companion Memorandum Decision the court is issuing contemporaneously with this decision. Robinson's theories of negligent failure to warn regarding HIV/AIDS and negligent infliction of emotional distress will not be discussed as Robinson's counsel has admitted that such state law causes of action are not available in a nondischargeability proceeding under 11 U.S.C. § 523(a).

2. It is axiomatic that the complaint must be construed "in the light most favorable to the plaintiff, and its allegations are taken as true" for the purpose of determining whether the allegations constitute a statement of a claim for which relief may be granted. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996). Therefore, in the following discussion of facts, the court assumes—for the purposes of this motion only—that all of the allegations of the complaint are true.

3. Azidothymidine, generally described as AZT, is a drug commonly used in the treatment of HIV/AIDS. The disease was described by the court in *Macy's California, Inc. v. Superior Court*, 41 Cal.

App.4th 744, 48 Cal.Rptr.2d 496 (1995) as follows:

> We insert here an instructional footnote about AIDS and HIV, one probably unnecessary for the contemporary reader. We optimistically anticipate a day when AIDS/HIV is nothing more than a historical footnote. "First isolated and identified by scientists in 1983, HIV is a retrovirus that attacks the human immune system. The virus invades host cells, notably certain lymphocytes, replicates itself, weakens the immune system, and ultimately destroys the body's capacity to ward off disease. [¶] HIV's presence is detected by a laboratory blood test for antibodies to the virus. The virus may reside latently in the body for periods as long as ten years or more, during which time the infected person will manifest no symptoms of illness and function normally. HIV typically spreads via genital fluids or blood transmitted from one person to another through sexual contact, the sharing of needles in intravenous drug use, blood transfusions, infiltration into wounds, or from mother to child during pregnancy or birth. [Citations.] [¶] AIDS, in turn, is the condition that eventually results from an immune system gravely impaired by HIV.... AIDS is invariably fatal." (*Faya v. Almaraz* (1993) 329 Md. 435, 620 A.2d 327, 328–329.) 41 Cal.App. 4th at 746–7 n. 1, 48 Cal.Rptr.2d 496.

etary liability asserted in the State Court Complaint be declared nondischargeable under 11 U.S.C. § 523(a)(6) (" § 523(a)(6)").

## III. DISCUSSION

■ Initially, it should be noted that Louie's knowledge of his HIV status gave rise to a duty of disclosure and fair dealing with his sexual partners. This conclusion derives from both the general duty expressed in California Civil Code section 1714 (1997) that "every one is responsible not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill", as well as the more specific duty of disclosure established in cases such as *Doe v. Roe*, 218 Cal.App.3d 1538, 1545, 267 Cal.Rptr. 564, 567 (1990) (duty to disclose infection with communicable disease prior to intercourse); and *Kathleen K. v. Robert B.*, 150 Cal.App.3d 992, 996, 198 Cal.Rptr. 273, 276 (1984) (defendant breached duty to warn of communicable disease).[4]

If Robinson had plead that he had been infected with HIV by Louie, his causes of action for fraud, intentional infliction of emotional distress and sexual battery would unquestionably be proper and sustainable under California law. *See, e.g., Doe v. Roe* and *Kathleen K. v. Robert B., supra.* They would also survive a Rule 12(b)(6) challenge as stating, at the very least, claims under § 523(a)(6).

Robinson has plead, however, that he was exposed to, but not infected with HIV. Consequently this court must determine whether *Kerins v. Hartley*, 27 Cal.App.4th 1062, 33 Cal.Rptr.2d 172 (1994) (reviewing causes of action arising from patient's exposure to HIV

by her physician, without infection) and analogously, *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993) (assessing availability of damages based on exposure to carcinogens without development of cancer) mandate the conclusion urged by Louie: that Robinson cannot express legally cognizable damages for fear of acquiring AIDS, and cannot therefore support a cause of action arising out of exposure to HIV without infection.[5]

### A. Intentional Infliction of Emotional Distress

■ The elements of the tort of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 258, 649 P.2d 894 (1982). The conduct itself must be so extreme "as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

■ A properly plead claim for intentional infliction of emotional distress provides the required elements of a nondischargeable debt under § 523(a)(6). *See Impulsora Del Territorio v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir.1986) (holding that a "wrongful act ... done intentionally, [which] necessarily produces harm, and is without just cause or excuse ... is 'willful and mali-

---

4. This duty is also reflected in Cal. Health & Safety Code § 120290, which makes the willful exposure of a contagious infectious or communicable disease to another person a misdemeanor.

5. In *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 434, 131 Cal.Rptr. 14, 22, 551 P.2d 334 (1976), the California Supreme Court stated that the courts may depart from the premise that each man owes a duty to society of ordinary care and skill, only based upon a careful review of several policy considerations including foreseeability and certainty of harm, the connection between defendant's conduct and plaintiff's injury, and the ramifications to the community of imposing a duty of care.

Although an analysis of the *Tarasoff* factors leans in favor of imposing liability on Louie, *Kerins*—in departing from the general and specific duties of disclosure where there is exposure without infection—made a policy decision, focusing on certainty of harm, which follows from the general overall limits on the availability of emotional distress damages in California. *See, e.g., Christensen v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991); Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989); as well as *Potter v. Firestone*, upon which *Kerins* was based.

cious' even absent proof of a specific intent to injure").

■ Here, Louie acted with at least reckless disregard of the almost certain probability of causing Robinson extreme emotional distress, if not infection itself, and Robinson did, in fact, suffer extreme emotional distress as a direct result of Louie's conduct.

In *Potter v. Firestone,* however, the California Supreme Court stated, in the context of intentional actions which exposed the plaintiff to carcinogens, that a plaintiff must demonstrate that his fear of developing cancer is reasonable. *Potter,* 6 Cal.4th at 1004, 25 Cal.Rptr.2d 550, 863 P.2d 795. This requires a showing that the "fear is based upon medically or scientifically corroborated knowledge that the defendant's conduct has significantly increased the plaintiff's risk of cancer and that the plaintiff's actual risk of the threatened cancer is significant." *Id.*

In *Kerins,* the court of appeal extended the *Potter* reasonable fear requirement to a case involving exposure to HIV, where there was no subsequent infection.[6] *Kerins,* 27. Cal.App.4th at 1075, 33 Cal.Rptr.2d 172. *See also Herbert v. Regents of the University of California,* 26 Cal.App.4th 782, 31 Cal. Rptr.2d 709 (1994) (holding that the fear of cancer rule applies to fear of AIDS cases). The *Kerins* court held that because plaintiff had tested negative for HIV more than six months after exposure, the potential of HIV being present in her system but not detected by the HIV test was so minimal that her fear of contracting AIDS was unreasonable as a matter of law. Therefore plaintiff could not demonstrate legally cognizable damages for the purpose of her cause of action for inten-

tional infliction of emotional distress. *Kerins,* 27 Cal.App.4th at 1075–76, 33 Cal. Rptr.2d 172.

Although neither *Potter* nor *Kerins* address the question of whether, in HIV exposure cases, there should be emotional distress damages available for the six month window of anxiety following exposure, during which it is uncertain if exposure has actually occurred,[7] the decision in *Kerins* specifically overruled the court of appeal's prior decision in the same case[8] in which damages were allowed for a reasonable window of anxiety. The *Kerins* court definitively expressed its opinion that damages for intentional or negligent infliction of emotional distress are not available without actual infection.

Taking *Kerins* and *Potter* together, this court is required to view the question of whether Robinson has sustained legally cognizable damages, not while Robinson was suffering the distress and fear about possibly being infected with HIV, but instead after the six month window of anxiety has passed. Once Robinson received HIV negative test results, he was no longer able to sustain a cause of action for intentional infliction of emotional distress.

Robinson contends that his fear is reasonable, because it is possible that he is actually infected with HIV, even though he has not produced antibodies. This assertion does not comport with the current medical consensus that HIV testing is conclusive at six months from infection in almost 100% of cases.[9] Under *Potter* and *Kerins,* Robinson cannot state a claim for intentional infliction of emotional

---

**6.** In *Kerins,* plaintiff was operated on by a physician who was infected with HIV at the time of the surgery. Plaintiff subsequently learned that the physician was HIV positive, and although the plaintiff tested negative for HIV, she brought a suit against the physician for intentional infliction of emotional distress and battery, as well as negligence-based causes of action which are not relevant in the present matter. *Kerins,* 27 Cal. App.4th at 1066, 33 Cal.Rptr.2d 172.

**7.** Based on the discussion in *Kerins* regarding the reliability of HIV testing procedures, as well as various references by the parties herein in their moving papers, it appears that in over 98% of

cases, an HIV test is conclusive six months from exposure. This relatively short period of time for HIV to manifest itself should not be confused with the much longer period of time the virus may reside in the body before resulting in AIDS. See quote from *Faya v. Almaraz,* 620 A.2d at 328–29, *supra* in note 3.

**8.** The earlier decision is set forth at *Kerins v. Hartley,* 21 Cal.Rptr.2d 621 (1993), *rev'd,* 24 Cal. Rptr.2d 236, 860 P.2d 1182 (1993).

**9.** *See* note 7, *supra.*

distress, and this cause of action must be dismissed under Rule 12(b)(6).[10]

### B. *Fraud*

Robinson charges Louie with "fraud and deceit re HIV/AIDS." He alleges that Louie owed him a duty prior to engaging in sexual relationships to disclose the fact that Louie had tested positive for HIV/AIDS and contends that the duty is based upon a fiduciary obligation arising out of the couples' special relationship and the general duty of a person with venereal disease to avoid sexual contact with uninfected persons, or at least to warn potential sex partners before sexual contact occurs, citing *Doe v. Roe, supra.* He alleges that Louie's positive test for HIV/AIDS was a material fact since it put Robinson at great risk, that Louie knew that the undisclosed facts were material and that the representations concerning the lack of any need to take normal precautions were false and made with intent to induce Robinson's reliance by engaging in unprotected high-risk sexual practices. Robinson alleges that he relied justifiably upon those misrepresentations, and that he would not have done so had he known the true facts. He contends that such conduct was intentional, wrongful, malicious and despicable, and carried on with a willful and conscious disregard for the rights and safety of others.

**10.** In *Petri v. Bank of New York,* 582 N.Y.S.2d 608, 612–14, 153 Misc.2d 426, 432–34 (1992), a case decided in part on similar circumstances as the present case, the court agreed that an intentional infliction of emotional distress cause of action could not stand in the absence of actual transmission of the HIV virus. However, the court dismissed without prejudice to reinstate the cause of action if the plaintiff ever became infected with HIV based on exposure by the defendant. *See also B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175 (1988) (approving a claim of intentional infliction of emotional distress following infection with the HIV virus). Consequently, if Robinson subsequently becomes infected with HIV, and can prove causation, he presumably could bring a cause of action at that time, as a matter of state law. Under California Civil Code section 340, the statute of limitations for bringing a personal injury cause of action runs for one year from the time the plaintiff knew or should have known of the injury. *See also Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Anderson v. Southern Pac. Co.,* 231 Cal.App.2d 233, 41 Cal.Rptr. 743 (1965); and, *Tresemer v. Barke,* 86 Cal.App.3d 656, 150 Cal. Rptr. 384 (1978) (all three cases holding that a

Although Robinson contends that the allegations of the State Court Complaint, if proven, establish nondischargeability under § 523(a)(6), the court will analyze the fraud allegations under traditional 11 U.S.C. § 523(a)(2) (" § 523(a)(2)") standards.

Section 523(a)(2) provides that a debt for "money, property or services" is nondischargeable, "to the extent obtained by false pretenses, a false representation, or actual fraud." Even though a literal reading of § 523(a)(2) indicates that it applies only to "a debt for money, property or services" obtained by fraud and Robinson has not alleged that Louie obtained such "money, property, or services," the Ninth Circuit has specifically held that this section also applies to "loss to the creditor [that] the act of fraud itself created." *Lee–Benner v. Gergely (In re Gergely),* 110 F.3d 1448, 1453 (9th Cir.1997) (an action for alleged intentional misrepresentation of the need for an amniocentesis test fell under § 523(a)(2), even where debt was not for money obtained by fraud, but for damages resulting collaterally from the alleged fraud).

Generally, the courts have held that a cause of action for fraud under § 523(a)(2) has five necessary elements: (1) a represen-

cause of action for personal injury accrues at the time the defendant knew of should have known of the injury). Robinson could not know he was infected until he actually tested positive and that should therefore be the time at which the statute of limitations should begin running, if it ever occurs. The Ninth Circuit Court of Appeals has confirmed that the same results should follow under California law upon positive HIV testing or infection with AIDS. *New v. Armour Pharmaceutical Co.,* 67 F.3d 716, 721–22 (9th Cir.1995).

Nonetheless, if after Louie's discharge in bankruptcy, Robinson became HIV positive due to Louie's exposing him to HIV, he may be barred from bringing a suit because the possibility of his developing HIV was a contingent claim, in the contemplation of the parties, arising from prepetition activities of the debtor. Such a claim would theoretically have to be brought in Louie's current bankruptcy case or be discharged under 11 U.S.C. § 727(b); *See California Department of Health v. Jensen (In re Jensen),* 995 F.2d 925 (9th Cir.1993) (finding that injury, although unmanifested, was in the fair contemplation of the parties and was therefore discharged). Because this scenario is not presented here, the court expresses no opinion on the outcome of these issues.

tation; (2) falsity; (3) scienter; (4) reliance; and (5) "that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Gergely*, 110 F.3d at 1453. Similarly, California Civil Code section 3294(c)(3) (1997) defines fraud as, "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person or property or legal rights or otherwise causing injury."

A cause of action which sets forth the elements of fraud under California law and properly alleges justifiable reliance establishes the basis for a nondischargeable debt under § 523(a)(2). It appears, therefore, that Robinson has adequately plead the required elements of his fraud cause of action. As a result of Louie's conduct, Robinson was injured in some amount, by the fear and stress from the time he learned he was exposed to HIV to the time he took an HIV test, and found he was HIV negative, and from the time following his HIV test based on his concern that he may nonetheless have been infected by Louie, but had a false-negative result.

While it would appear that Robinson has plead every element for fraud, the prevailing California law negates the fifth element—that of damages caused by the fear of contracting HIV/AIDS. Kerins requires that where there is exposure to HIV without infection, the plaintiff must demonstrate that his fear of contracting HIV is reasonable, as a threshold for a legally sustainable assertion of damages.[11]

Although Louie's actions occurred in the scope of an intimate relationship, those actions are not sufficient to distinguish the present case and avoid the policy-based limitation on damages for a cause of action based on damages arising from fear of AIDS. Nonetheless, Robinson may have incurred damages other than the distress caused by the fear of AIDS as a result of the alleged fraud, such as the costs of testing and future monitoring. *Potter*, 6 Cal.4th at 1002–09, 25 Cal.Rptr.2d 550, 863 P.2d 795. Therefore, although he cannot recover damages for the fear of contracting AIDS, he will be allowed to amend his complaint to allege other actual damages arising out of Louie's alleged fraudulent conduct.

## C. Sexual Assault and Sexual Battery

Robinson alleges a cause of action entitled "Sexual Battery" and another entitled "Sexual Assault." The allegations of the two causes of action are the same except the sexual battery cause contains an additional allegation as to Louie's intent to make contact with Robinson's person and to harm him by engaging in unprotected sex. The sexual assault claim alleges that Louie intended to cause Robinson apprehension of harmful and offensive contact. Robinson apparently bases these causes of action on California Civil Code § 1708.5 (1997) ("C.C. § 1708.5"),[12] although he does not mention that section in

---

11. In *Potter*, the court held that where plaintiff was negligently exposed to carcinogens, he had to show that it was "more likely than not" that he would develop cancer as a result of the exposure. *Potter*, 6 Cal.4th at 996, 25 Cal.Rptr.2d 550, 863 P.2d 795. The *Potter* court then provided an exception to the "more likely than not" standard where the defendant breached a duty owed to the plaintiff and engaged in conduct that was oppressive, fraudulent or malicious, resulting in a negligent injury to the plaintiff. *Id.* at 999, 25 Cal.Rptr.2d 550, 863 P.2d 795. In such a cause of action, the plaintiff is not required to show that it is more likely than not that he will develop a serious illness, but merely that his fear is "reasonable, genuine and serious." *Id.*

   *Kerins* extended the "reasonable fear" requirement to a cause of action based on intentional acts directly resulting in damage to the plaintiff, as opposed to the intentional acts in *Potter* which

negligently injured the plaintiff. *Kerins*, 27 Cal. App.4th at 1075, 33 Cal.Rptr.2d 172.

12. California Civil Code § 1708.5 provides, in part:

   (a) A person commits a sexual battery who does any of the following:
   (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another; and a sexually offensive contact with that person directly or indirectly results.
   (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.
   (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

his complaint or in his opposition to Louie's motion.

■■■ Robinson's claim for sexual assault does not satisfy the requisites of C.C. § 1708.5. Robinson did not know, when he consented to have sex with Louie, that Louie was HIV-positive; Robinson thus could not have suffered an apprehension of sexually offensive conduct, and Louie cannot be said to have intended to cause such an apprehension, inasmuch as he was concealing the very fact that would have made the contact offensive. Therefore, Robinson cannot sustain his sexual assault claim.

■■■■ Robinson's allegations of an unwanted sexual touching, however, are facially sufficient to sustain his causes of action based on the language of C.C. § 1708.5. Louie intended to have sexual contact with Robinson; the contact was harmful or offensive because it exposed Robinson to a fatal disease, and Louie knew this. By engaging in unprotected sexual contacts without informing his partner of his HIV-positive status, a sexually offensive contact resulted. To the extent Robinson was harmed by this offensive touching, the allegations of sexual battery thus state a basis for nondischargeability under § 523(a)(6). *Cecchini*, 780 F.2d at 1443 (§ 523(a)(6) applies to "wrongful act ... done intentionally, [which] necessarily produces harm"). Once again, however, California case precedent raises specific problems which require further analysis: whether *Kerins v. Hartley, supra*, prevents Robinson from alleging "harm" and thus bars recovery for sexual battery; and whether Robinson's consent to intercourse negates the necessary lack of consent element of the sexual battery.

### 1. Applicability of *Kerins v. Hartley*.

Louie does not specifically address the sexual battery cause of action, but includes it in his fraud cause of action analysis, arguing that the sexual battery claim should be dismissed for the same lack of legally cognizable damages under *Kerins*.

Although the *Kerins* court barred a battery cause of action based on the same emotional distress limitations applicable to the intentional infliction of emotional distress and fraud claims (viz. no reasonable fear of infection), 27 Cal.App.4th at 1076, 33 Cal.Rptr.2d 172, *Kerins* will not bar Robinson in the present case for several reasons.

a. *Kerins* dealt with a technical battery in the scope of a surgical procedure, and, contrary to case law regarding sexual battery which has liberally allowed battery actions, California precedent limits the availability of battery causes of action arising from surgical procedures. *See, e.g., Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972) (holding that a battery cause of action is only proper where a surgeon performs a surgery to which the patient has not consented). Therefore the same inherent restrictions on a technical battery case do not apply to a sexual battery case, particularly one where the plaintiff has not consented to high risk sexual intercourse.

b. The law presumes that a plaintiff has been damaged merely by being the victim of an unwanted and offensive touching; he does not have to demonstrate additional damages to support a sexual battery cause of action. "[T]he essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body...." *Restatement (Second) of Torts* § 18 (1965). *Cf. People v. Malone*, 47 Cal.3d 1, 37, 252 Cal.Rptr. 525, 762 P.2d 1249 (1988) (describing sexual battery as an unwanted sexual advance); and, *People v. Pahl*, 226 Cal. App.3d 1651, 1661, 277 Cal.Rptr. 656, 663 n. 4 (1991) (stating that the essence of the offense of sexual battery is the unwanted touching). The plaintiff does not even have to be aware of the offensive contact at the time it occurs. *Restatement (Second) of Torts*, § 18 (1965). *See also Aetna Casualty & Surety Co. v. Sheft*, 989 F.2d 1105 (9th Cir.1993), where the Ninth Circuit expressed its belief that the California Supreme Court would characterize conduct such as Louie's as "inherently harmful." [13]

---

**13.** *Aetna Casualty & Surety* involved an action related to a highly publicized suit brought by a

former homosexual lover of the late movie star, Rock Hudson. Hudson's homeowner's insur-

The essence of a battery claim, unlike the claim of emotional distress dealt with in *Kerins*, is not primarily to compensate the plaintiff for mental distress caused by the touching, but rather to punish the defendant for the unwanted contact.[14]  Under traditional law, injury is inherent in the offensive touching, thereby "necessarily produc[ing] harm" and satisfying *Cecchini* (780 F.2d at 1443) and § 523(a)(6).

C.  The policy reasons bolstering *Kerins* do not exist here.  The *Kerins* court emphasized that allowing recovery to those who merely fear they have been infected with a disease takes money away from those who are actually suffering from the disease by dissipating a finite pool of medical malpractice insurance proceeds in payment of emotional distress claims without actual injury. *Kerins,* 27 Cal.App.4th, at 1072–73, 33 Cal. Rptr.2d 172.  In the case of an intentional tort between sexual partners, insurance may not generally be available and therefore this *Kerins* policy basis is not relevant in the present case.   Moreover, the court has a

competing, equally valid policy reason for allowing the sexual battery cause of action to proceed: providing a cause of action for mere exposure without infection may act as a deterrent to people who are infected and engage in high risk sex without informing their partners.  (Cf. *J.B. v.Bohonovsky, supra.*)

Therefore although *Kerins* generally impacts Robinson's sexual battery cause of action, that claim can be sufficiently distinguished from one arising out of a medical procedure, so that *Kerins* is not controlling in this instance.

d.  Finally, C.C. § 1708.5(b) directs that a person who commits a sexual battery is liable for damages "... including, but not limited to, general damages, special damages and punitive damages."

While Robinson may be precluded from bringing a nondischargeability action for intentional or negligent infliction of emotional distress for fear of AIDS, he is entitled to recover damages caused by the sexual battery.  "In the case of many torts, such as

---

ance policy issuer sought a declaration that its policy did not cover intentional acts of the insured.  A jury had already found that at the time Hudson's lover, Marc Christian, engaged in high-risk sex with him, Hudson knew that he had AIDS and concealed the information from Christian; that he affirmatively misrepresented his physical condition; that the misrepresentations were made to induce Christian to continue engaging in high-risk sex; that Christian reasonably relied upon Hudson's misrepresentations and concealment, and as a result suffered increased emotional distress; that Hudson's conduct was outrageous and his acts were done either with intent to cause Christian emotional damage or with reckless disregard of the probability of causing such distress.  At the time of the action brought by the insurer, Christian had not tested positive for AIDS. *See also Christian v. Sheft,* No. C 574153 (Cal.Super.Ct. Feb. 15, 1989) (found liability even though plaintiff had tested negative 16 times). *J.B. v. Bohonovsky,* 835 F.Supp. 796, 801 n. 6 (D.N.J.1993) (describing in detail the jury action and findings in the *Christian v. Sheft* action).

14.  In a case similar to this one (except that it did not involve a cause of action for sexual battery), a court denied damages for the intentional infliction of emotional distress to a plaintiff whose partner had wilfully concealed that he had AIDS and failed to take the steps necessary to prevent its sexual transmission. *J.B. v. Bohonovsky,* 835 F.Supp. 796 (D.N.J.1993).  The court found that the plaintiff had failed to establish the severity of

his emotional distress.  In so holding, however, the *Bohonovsky* court recognized that a defendant who knowingly places his or her partner at grave risk by failing to disclose his illness before engaging in sexual activity should bear some liability:

There can be little doubt that a person who knows that he or she has AIDS and misrepresents or conceals that knowledge from a sexual partner who then contracts AIDS as the result of unprotected sex, should be liable for the injuries sustained by that partner.  A person who knowingly has AIDS, has a duty to disclose it and take the steps necessary to protect against its transmission to others.

Those who knowingly put others at such grave risk should not escape liability merely by the fortuitous circumstances that their conduct did not result in the actual transmittal of the disease.  If nothing else, fear of liability may serve as a deterrent to such hateful conduct in the guise of love.  Properly supported by competent evidence and medical opinion, claims for emotional distress are and should be cognizable.  In this matter, however, plaintiff has failed to meet the threshold necessary to permit this matter to go forward.

*Id.* at 797–98.  In *Bohonovsky,* the court applied New Jersey law, on intentional infliction of emotional distress caused by fear of AIDS, which appears to be contrary to California law under *Kerins.*  But in the present case, Louie's liability arises in the sexual battery cause of action.

assault, battery, false imprisonment, and defamation, mental suffering will frequently constitute the principal element of damages." *Merenda v. Superior Court,* 3 Cal.App.4th 1, 8–9, 4 Cal.Rptr.2d 87 (1992), *quoting State Rubbish Collectors' Assn. v. Siliznoff,* 38 Cal.2d 330, 339, 240 P.2d 282 (1952); *citing Deevy v. Tassi,* 21 Cal.2d 109, 130 P.2d 389 (1942) ("The principal element of damages in actions for battery, assault or false imprisonment, as well as in actions for defamation, malicious prosecution and alienation of affections, is frequently the disagreeable emotion experienced by the plaintiff ... A person who has a cause of action for a tort may be entitled to recover as an element of damages for that form of mental distress known as humiliation ... As an element of damages for a tort, a person may be entitled to recover for a feeling of anxiety ... if this is the expectable result ... In some cases fear and anxiety alone are a sufficient basis for the action, as where the defendant has assaulted the plaintiff. *In California the law is settled that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of* ... and in this connection mental suffering includes fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and injury ..."(emphasis added)).

In light of the foregoing long-standing case law, it is clear that if a sexually offensive contact causes emotional distress, that "distress" is part of the plaintiff's damages under common law and C.C. § 1708.5. Those emotional damages may include the dismay and shock which would naturally flow from the realization that the defendant had wilfully and deceitfully exposed his life partner to a fatal disease. It is not limited to the fear of the disease itself, as opposed the plaintiff on *Kerins,* whose claim for emotional damages appears to be limited to such fear. As previously stated, the essence of the grievance is the offense to the dignity involved in the

unpermitted and intentional invasion of the inviolability of the person and not in any physical harm done to the body.

It is also clear under California law that a plaintiff may recover nominal damages for improper conduct, whether or not the person has suffered actual damages.[15] Thus, even though emotional distress damages may not be recovered because Robinson's fear is not "reasonable" (see *Potter, infra* ), the sexual battery action may proceed.

2. *Robinson's Consent to Intercourse.*

Robinson's uninformed consent to intercourse does not alter the validity of this cause of action. The failure to disclose a communicable disease prior to intercourse vitiates consent and turns consensual intercourse into battery. *Kathleen K. v. Robert B.,* 150 Cal.App.3d at 997, 198 Cal.Rptr. 273 (holding that consent is vitiated by the fraudulent concealment of the risk of infection with venereal disease). *See also Aetna Casualty v. Sheft,* 989 F.2d at 1109 (stating that consenting to have sex is not the same as consenting to be exposed to AIDS, and therefore consent is vitiated by the nondisclosure of HIV status). In the present case, Robinson consented to sex, but did not consent to be exposed to HIV. For this reason, Louie's nondisclosure of his HIV status vitiated Robinson's consent to intercourse.

Robinson's allegation of an unwanted sexual touching is, therefore, sufficient to support his cause of action for sexual battery, and Louie's motion to dismiss will be denied as to this cause of action.

## IV. CONCLUSION

The court is concurrently issuing a separate order consistent with this decision.

---

15. As stated by Professor Witkin:

Nominal damages are usually awarded where there is an invasion of a legally protected interest which does not result in actual damage. The invasion is "injury without damage," and an award of damages is not the object of the action, which is brought to vindicate the right or interest. The interest is rec-

ognized and protected by the award of nominal damages, together with *costs.* (C.C. 3360; *Siminoff v. Goodman & Co. Bank* (1912) 198 C.A. 5, 15, 18 Cal.App. 5, 121 P. 939; Am. Jur.2d, Damages § 10.)

6 B.E. Witkin, *Summary Of California Law (Torts)* § 1317 at 775 (1988).